**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**James L. KEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 27, 2001.
Filed Dec. 27, 2001.

David J. Long, Reading, for appellant.

Mark C. Baldwin, Asst. Dist. Atty., Reading, for Com., appellee.

Before DEL SOLE, President Judge, CAVANAUGH J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus.

¶ 1 Appellant, James L. Key, appeals from the judgment of sentence of five (5) days to twelve (12) months incarceration entered April 19, 2001. After review, we vacate the judgment of sentence and remand for further proceedings consistent with this opinion.

¶ 2 The Trial Court has set forth the facts underlying Appellant's conviction in its opinion as follows:

[O]n February 25, 2000 at approximately 10:30 a.m., Officers Robert Bickham and Nelson Berrios of the Reading Police Department were working undercover as part of the High Crime Unit plain clothes detail in the area of Front and Elm Streets.[1] (N.T. Omnibus Pretrial Hearing Tr. 02/01/01, p. 4, 11–12).

1. According to Officer Bickham, his superiors at the Reading Police Department had instructed he and Officer Berrios to go to this area to check out drug activity and "**stop and question people**" and "**see what they are doing in the area.**" N.T. Suppression Hearing, 2/1/2001, at 4.

While patrolling in an unmarked car, the police observed the [Appellant] talking with another male. Upon seeing the undercover officers watching, the [Appellant] quickly turned and walked north on North Front Street. *Id.* at 5, 12. Officer Bickham exited the unmarked vehicle, approached the defendant, and queried, "[H]ey, could I talk to you bud [?]" *Id.* at 5. The [Appellant] replied, "[S]ure, no problem," *Id.* at 6.

Officer Berrios drove up to where Officer Bickham and the [Appellant] were conversing and exited the vehicle. *Id.* at 12. Officer Bickham identified himself and displayed his badge. He explained to the [Appellant] that he and Officer Berrios were working undercover in high crime areas and stopping people to see what they were doing and whether they lived in the area. *Id.* at 6. The [Appellant] provided [Officer Bickham] his name, date of birth, and address as 220 North Front Street. The [Appellant] explained that he was on his way to a district justice office to take care of some warrants or tickets. Officer Bickham ran the [Appellant's] name through the National Crime Information Center (NCIC) computer and informed the [Appellant] that he found nothing outstanding at the district justice office. *Id.* at 6, 12. At this point Officer Bickham shook hands with the [Appellant] and told him he was free to leave. *Id.* at 7, 9–10, 12.

Officer Berrios then asked the [Appellant] if he had any drugs or drug paraphernalia on him because he was in a high drug area. The [Appellant] stated no and then went through his pockets showing that he had nothing on him. *Id.* at 12, 15. Officer Berrios asked the [Appellant] if he could double check his pockets. The [Appellant] relied, "Go

ahead, I have nothing to hide." *Id.* at 13. Officer Berrios found a cellophane packet of suspected heroin in the [Appellant's] left jacket sleeve pocket. The cellophane packet was seized and Officer Berrios conducted a Valtox test on the packet contents which yielded a positive result for heroin.

Trial Court Opinion, filed 5/31/2001, at 1–2.

¶ 3 Appellant was arrested. Prior to trial he filed an omnibus pretrial suppression motion on the basis that he was stopped and searched·without reasonable suspicion in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. The Trial Court conducted a suppression hearing on February 1, 2001 at which Officers Bickham and Berrios testified. Subsequently, the Court denied the suppression motion. Appellant proceeded to a bench trial and was convicted on April 19, 2001 of possession of a controlled substance (heroin).[2] This timely appeal followed.

■■■ ¶ 4 On appeal to our Court Appellant presents one issue for our consideration:

A. DID NOT THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED DURING AN INVESTIGATIVE DETENTION NOT BASED ON REASONABLE SUSPICION OF CRIMINAL ACTIVITY BY APPELLANT, WHEN ANY CONSENT OBTAINED DURING THE ENCOUNTER IS TAINTED, IS NOT VOLUNTARY AND IS LEGALLY INSUFFICIENT TO SUPPORT THE SEARCH?

Appellant's Brief at 4.

When reviewing the suppression court's denial of a motion to suppress,

---

2. 35 P.S. § 780–113(1)(16).

we must first ascertain whether the record supports the suppression court's factual findings. *See Commonwealth v. Dangle,* 700 A.2d 538, 539 (Pa.Super.1997). When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *See Commonwealth v. Lynch,* 773 A.2d 1240, 1243 (Pa.Super.2001). We are bound by the suppression court's findings if they are supported by the record, and may only reverse the suppression court if the legal conclusions drawn from the findings are in error. *See Commonwealth v. Perry,* 710 A.2d 1183, 1184 (Pa.Super.1998).

*Commonwealth v. Ortiz,* 786 A.2d 261, 263–264 (Pa.Super.2001). "As a reviewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied." *Commonwealth v. Turner,* 772 A.2d 970, 972–973 (Pa.Super.2001) (*en banc*).

¶ 5 Appellant argues that his motion to suppress should have been granted since the officers had no warrant and had seen nothing giving rise to a reasonable suspicion of Appellant's involvement in criminal activity which would have justified stopping Appellant on a public sidewalk. As a consequence, Appellant maintains that the consent which he gave to being searched was the tainted product of his illegal detention and could not justify the subsequent search of his person. After review, we conclude that Appellant is correct, and the Trial Court erred in failing to suppress the evidence obtained as a result of the search.

■ ¶ 6 "Both the Fourth Amendment of the United States Constitution and Article 1 Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. Cook* 558 Pa. 50, 54, 735 A.2d 673, 675 (1999). The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const.Amend. IV. The Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. Art. I, § 8. Warrantless searches and seizures are therefore unreasonable per se, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement. *In the Interest of N.L.,* 739 A.2d 564, 566 (Pa.Super.1999), *appeal denied,* 562 Pa. 672, 753 A.2d 819 (2000) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

■ As our Court has further reminded:

> The Pennsylvania Supreme Court has been vigilant in the protection of the right to privacy guaranteed by Article I, Section 8 of our state Constitution. On repeated occasions, the Court has admonished that:

The seriousness of criminal activity under investigation, whether it is the sale of drugs or the commission of a violent crime, can never be used as justification for ignoring or abandoning the constitutional right of every individual in this Commonwealth to be free from intrusions upon his or her personal liberty absent probable cause.

*Commonwealth v. Polo,* [563 Pa. 218, 226], 759 A.2d 372, [376] (quoting *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769, 775–76 (Pa.1996)).

*Commonwealth v. Beasley,* 761 A.2d 621, 624 (Pa.Super.2000), *appeal denied,* 565 Pa. 662, 775 A.2d 801 (2001). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Id.*

The first of these [interactions] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Phinn,* 761 A.2d 176, 181 (Pa.Super.2000), *appeal denied,* — Pa. ——, 785 A.2d 89 (2001) (quoting *Commonwealth v. Ellis,* 541 Pa. 285, 293–294, 662 A.2d 1043, 1047–1048 (1995)).

■■■■ ¶ 7 In the instant case, the Trial Court held, and the Commonwealth now argues, that the nature of the interaction between Appellant and the officers amounted to nothing more then a "mere encounter." By contrast, Appellant asserts that the officers subjected him to an investigative detention. Our Supreme Court has recognized that "the line between a mere encounter and an investigative detention cannot be precisely defined because of the myriad of daily situations in which policemen and citizens confront each other on the street." *Matos, supra* at 457–458, 672 A.2d at 773–774. "[N]ot all personal contacts or exchanges between police officers and individuals involve 'seizures' of persons; however, not every police interrogation may be dismissed as personal intercourse. When an officer, by means of physical force or show of authority, has restrained the liberty of an individual, a 'seizure' has occurred." *Commonwealth v. Lewis,* 535 Pa. 501, 508, 636 A.2d 619, 622–623 (1994). "Any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity." *Id.* (quoting *Reid v. Georgia,* 448 U.S. 438, 440, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980)).

■■■■ ¶ 8 Our Supreme Court has adopted an objective test for determining whether a police officer has restrained the liberty of a citizen such that a seizure occurs. The pivotal inquiry in making this determination is "whether a reasonable [person] innocent of any crime, would have thought he [or she] was being restrained had he [or she] been in the defendant's shoes." *Matos, supra* at 457, 672 A.2d at 773 (citing *Commonwealth v. Jones,* 474 Pa. 364, 373, 378 A.2d 835, 840 (1977)). A Court must examine "all surrounding circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." *Commonwealth v. Mendenhall,* 552 Pa. 484, 488,

715 A.2d 1117, 1119 (1998) (quoting *Jones, supra* at 372, 378 A.2d at 839). If a reasonable person would not feel free to terminate the encounter with police and leave the scene, then a seizure of that person has occurred. *Commonwealth v. McClease*, 750 A.2d 320, 325 (Pa.Super.2000).

■ ¶ 9 A review of the totality of the circumstances surrounding Appellant's initial interaction between himself and Officer Bickham compels the conclusion that Appellant was subjected to an investigative detention and not simply a mere encounter. After requesting to speak with Appellant, Officer Bickham identified himself to Appellant as a police officer by showing him his badge. N.T. Suppression Hearing, *supra* at 6. Officer Bickham testified that he then specifically informed Appellant that "we're working undercover high crime areas and we're out today just *stopping* people in these areas to see what they are doing; if they live in the area...." *Id.* at 6 (emphasis supplied). Officer Bickham acknowledged that he told Appellant that they were stopping people because it was a "drug area." *Id.* at 9. Officer Bickham then requested personal information from Appellant including his name, date of birth and address and used that personal information to run a criminal background check on Appellant via police radio while Appellant waited. *Id.* at 6, 9. While Officer Bickham was running the check on Appellant, Officer Berrios pulled his car into close proximity with Appellant and joined Officer Bickham on the scene. *Id.* at 12. Clearly a person in Appellant's position who had been expressly informed by a police officer that he was being "stopped" as part of an investigation into drug activity and who had his background checked for prior criminal activity by that officer via police radio would not have reasonably felt free to terminate the encounter with

the officer and walk away. When an individual has been informed by a police officer that he or she has been "stopped" the reasonable implication of such as statement to the individual is that his or her freedom of movement has been restrained by the officer. This fact, coupled with the subsequent taking by the officer of Appellant's personal information for the purpose of a criminal background check, would tend to lead any reasonable person to believe that he or she was the express target of a police investigation into criminal activity and, as such, to feel that his or her liberty was being restrained as a result of the investigation. Thus, Appellant was subject to an investigative detention by Officer Bickham.

■ ¶ 10 As discussed, *supra*, it is axiomatic that an investigative detention of an individual must be supported by reasonable suspicion of that individual's involvement in criminal activity. Here there was absolutely no reasonable suspicion of criminal activity on Appellant's part. When Appellant was first observed by the police officers he was merely present on a public sidewalk in a city neighborhood talking to another individual, a perfectly ordinary and constitutionally protected activity. The officers witnessed no transaction or exchange between the two individuals nor did they observe Appellant to be in outward possession of anything which would suggest his involvement in drug activity. The fact that Appellant was merely present in a "high crime area" in no way establishes his involvement in criminal activity. *See In re D.M.*, 566 Pa. 445, 781 A.2d 1161 (2001) (mere presence in a "high crime area" is insufficient to support reasonable suspicion of criminal activity); *Commonwealth v. Kearney*, 411 Pa.Super. 274, 601 A.2d 346 (1992) (same). Neither does the fact that Appellant ceased talking to his companion, turned and walked away

up the street upon observing the officers watching him constitute reasonable suspicion of Appellant's involvement in criminal activity. Appellant did not take flight at the approach of the officers but simply walked away. An individual's act of merely walking away from police officers in a "high crime area" is manifestly insufficient to justify an investigative detention of that individual. *See Commonwealth v. Carter*, 779 A.2d 591, 594 (Pa.Super.2001) (no reasonable suspicion existed to subject individual to investigative detention when officer observed individual talking to another person in a car and the individual walked away from the vehicle after seeing the approach of police); *Commonwealth v. Tither*, 448 Pa.Super. 436, 671 A.2d 1156 (1996) (mere fact that driver who was talking to pedestrian on street pulled away when police presence was announced by bystander insufficient to justify traffic stop of the vehicle); *Commonwealth v. Martinez*, 403 Pa.Super. 125, 588 A.2d 513 (1991), *appeal denied*, 530 Pa. 653, 608 A.2d 29 (1992) (woman's act of putting her hands in her coat and quickly walking away from her companions with whom she was talking on a street corner at the sight of the police, insufficient to support an investigative stop); *Commonwealth v. Pine*, 370 Pa.Super. 410, 536 A.2d 811, 814 (1988), *appeal denied*, 519 Pa. 653, 546 A.2d 57 (1988) (mere fact that Appellant twice walked away upon seeing officer's police car insufficient in and of itself to support an investigatory stop); *Contrast In re D.M., supra,* (individual's act of running away at sight of police in high crime area plus anonymous telephone call implicating individual in drug activity sufficient reasonable suspicion for investigatory stop); *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (*headlong flight* in high crime area by individual who possessed opaque bag immediately upon seeing police sufficient

reasonable suspicion for investigatory stop).

■ ¶ 11 Since we have determined that Appellant was subjected to an unlawful detention we must examine whether his consent to search his person was the product of the unlawful detention. As our Supreme Court has recognized:

> Where ... a consensual search has been preceded by an unlawful seizure, the exclusionary rule requires suppression of the evidence obtained absent a demonstration by the government both of a sufficient break in the causal chain between the illegality and the seizure of evidence, thus assuring that the search is not an exploitation of the prior illegality, and of voluntariness.

*Commonwealth v. Strickler,* 563 Pa. 47, 57, 757 A.2d 884, 889 (2000); *Commonwealth v. Freeman,* 563 Pa. 82, 88, 757 A.2d 903, 906 (2000). The three relevant factors to be examined in determining whether an unlawfully detained individual's consent to search is an independent act of free will or the product of the illegal detention are the temporal proximity of the detention and the consent, any intervening circumstances, and, particularly, the purpose and flagrancy of the officer's unlawful conduct. *Freeman,* at 92, 757 A.2d at 909.

¶ 12 In the case at bar, after Officer Bickham finished his criminal background check, he told Appellant that he was free to go and shook hands with him. However *immediately* thereafter Officer Berrios asked Appellant if he had any drugs or other contraband on his person. Officer Berrios told Appellant that he was asking this question because Appellant was in a high drug area. After Appellant replied that he did not possess any contraband and turned his pockets out, Officer Berrios then requested Appellant's consent to con-

duct a further search of his clothing and person.

¶ 13 Clearly there were no intervening spatial or temporal factors to dispel the coercive atmosphere of the initial unlawful detention. Officer Bickham and Officer Berrios were still in their identical locations when Officer Berrios's request to search was made and there was almost no passage of time between Officer Bickham's statement that Appellant was free to leave and Officer Berrios's request to search. Such an inquiry on Officer Berrios' part as to whether Appellant carried drugs or contraband, after informing Appellant that the request was made because of Appellant's presence in a high drug area, would unquestionably appear to a person in Appellant's position to have been related to the stated purpose of the initial detention i.e., an investigation into criminal activity involving drugs. Consequently, Officer Berrios's request to search for drugs and related contraband was clearly inconsistent with Officer Bickham's statement that Appellant was "free to go" and, instead, indicated that the investigation related to the initial stop was ongoing.

¶ 14 Moreover, neither officer ever informed Appellant of his right to refuse to be searched. Although there is no explicit requirement that a police officer who seeks the consent of an individual to be searched always advise the individual that he or she may refuse to give consent to such a search, the absence of the conveyance of this information by the officer is a factor a court may consider in assessing whether the individual's consent to the search was truly voluntary. *Strickler, supra* at 79, 757 A.2d at 901. Considering all of the above mentioned factors, we conclude that since Appellant's consent to a search of his person was the immediate coercive product of his unlawful detention in the absence of reasonable suspicion, his consent was manifestly ineffective to justify the subsequent search which was conducted. For consent to a search to have been given freely "there must be a total absence of duress or coercion, express or implied." *Commonwealth v. Harris,* 429 Pa. 215, 221, 239 A.2d 290, 293 (1968); *Commonwealth v. Smith,* 470 Pa. 220, 228, 368 A.2d 272, 275 (1977); *See also Bumper v. North Carolina,* 391 U.S. 543, 548–549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968) ("When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given."); *Schneckloth v. Bustamonte,* 412 U.S. 218, 228, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973) ("[T]he Fourth and Fourteenth Amendments [to the United States Constitution] require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion were applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed.") Thus, since Appellant's consent was the immediate coercive product of his unlawful detention in violation of his right to be free of an unreasonable search and seizure as guaranteed by the Fourth Amendment to the United States Constitution and Article I Section 8 of the Pennsylvania Constitution, the evidence against him recovered from the search of his person should have been suppressed by the Trial Court as the fruit of the unlawful search and seizure. *Freeman, supra; Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (evidence obtained as a result of an illegal search is the "fruit of the poisonous tree" of the illegal detention and must be suppressed).

¶ 15 Judgment of sentence is vacated and the case is remanded for a new trial

absent the suppressed evidence. Jurisdiction relinquished.