**Commonwealth v. Ortiz**

C. P. of Berks County, no. CP-06-CR-3993-2009.

*Alisa R. Hobart,* for Commonwealth.
*Holly B. Feeney,* for defendant.

PARISI, *J.,* May 10, 2010—On September 25, 2009, Walter Ortiz (defendant) was charged with persons not to possess/use/manufacture/control/sell/transfer firearms, firearms not to be carried without a license, possession with intent to deliver a controlled substance (cocaine, marijuana), possession of a controlled substance (cocaine), possession of a small amount of marijuana, and possession of drug paraphernalia and driving while operating privilege is suspended or revoked.

On October 15, 2009, the defendant filed an omnibus pretrial motion, including a motion for suppression of evidence and motion for writ of habeas corpus as to all counts. A hearing was held on the defendant's motion February 8, 2010. This court issued findings of fact and conclusions of law on March 5, 2010, granting the motion for suppression of evidence. This court did not rule upon the motion for writ of habeas corpus in accordance with *Commonwealth v. Keller,* 823 A.2d 1004 (Pa. Super. 2003).

On March 31, 2010, the Commonwealth filed a timely notice of appeal. The Commonwealth raises the following claims on appeal:

"(1) The trial court erred in suppressing evidence obtained during a lawful *Terry* frisk for weapons where police had reasonable suspicion to detain Ortiz pending an investigation into the status of an outstanding arrest warrant, and the furtive movements leading to this frisk were made during this detention.

"(2) The trial court erred in suppressing the evidence obtained following the lawful *Terry* frisk, *i.e.*, the defendant's statements to police and evidence recovered from the vehicle, as tainted by the initial illegality.

"(3) The trial court erred in suppressing evidence seized as a result of the search of the vehicle based upon the exceptions to the warrant requirement specified in *Arizona v. Gant,* ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed. 485 (2009)." Commonwealth's concise statement of matters complained of on appeal, 4/20/2010.

## FACTUAL FINDINGS

Officer Christopher Cortazzo testified that he is employed by the City of Reading Police Department as a uniform patrol officer and has been employed by the City of Reading Police Department for nine years. On August 23, 2009, Officer Cortazzo was working at approximately 6:15 A.M. At that time, Officer Cortazzo was on patrol in the area of Cedar Street, Reading, Berks County, Pennsylvania and was in full uniform including a badge of authority and firearm, and was traveling in a marked police car. It was daylight, sunny and warm.

Cedar Street is a one-way street. At that time, cars were parked on both sides of Cedar Street. Officer Cortazzo stated that since 2001, he has made numerous arrests for drug and gun offenses in that block and described it as "an open air drug market."

Officer Cortazzo observed a blue Nissan Sentra legally parked on the west side of Cedar Street. Officer Cortazzo slowed his vehicle and observed the Nissan to contain three occupants. All three occupants were "slumped down" in their seats. Office Cortazzo parked his patrol car parallel to the Nissan; at one point, a door of the Nissan was opened and hit the patrol car.

Officer Cortazzo recognized all three of the occupants of the Nissan. The defendant was identified as the occupant of the driver's seat. Officer Cortazzo cited the defendant in May of 2009 for driving with a suspended license and was aware of a scofflaw warrant for the defendant. However, Officer Cortazzo had last verified the warrant in late June or early July of 2009. The other oc-

cupants were Christopher Rodriguez and Wassou Rosa. Officer Cortazzo testified that occupants Rosa and Rodriguez both live in the block of Cedar Street where the Nissan was parked.

Officer Cortazzo stated he did not verify whether the defendant's scofflaw warrant was still active prior to approaching the Nissan because it was not tactically sound. There was insufficient time and if he had verified the warrant, the defendant or the other occupants could flee. The occupants of the Nissan were moving around and Officer Cortazzo did not know what they were doing. Officer Cortazzo did intend to arrest the defendant pursuant to the scofflaw warrant.

Officer Cortazzo observed the occupants make furtive movements inside the Nissan, including the back seat passenger reaching to the floor, and observed their eyes widen. Officer Cortazzo ordered the occupants to stop moving and called for a back-up officer because of concern for his own safety.

Officer Kennedy arrived as back-up approximately 35 minutes later and proceeded to remove the rear seat passenger. When approaching the Nissan on foot, Officer Cortazzo kept his hand on his gun, but it was not drawn. Officer Kennedy asked the rear seat passenger (Rodriguez) if he had anything illegal, to which the passenger said "no." Officer Kennedy conducted a pat-down of Rodriguez and found nothing except a dollar bill bearing a white substance.

Officer Cortazzo asked the defendant to turn off the car and removed him from the vehicle. Officer Cortazzo asked if the defendant had anything illegal and patted

him down for weapons. The defendant's right rear pants pocket contained a bulky metal object in the shape of a gun, which Officer Cortazzo discovered to be a Smith and Wesson handgun, which was loaded and contained five or six rounds. After a third officer arrived, the defendant was handcuffed and placed in a patrol car. Incident to arrest, the Officers discovered 27 clear plastic bags containing cocaine, $1,300 cash, and an operational cellular phone on the defendant's person. Rosa was then patted down and nothing was discovered. Rodriguez and Rosa were told to leave the scene. The officers then searched the areas of the Nissan where the occupants were reaching and found 13 baggies of marijuana.

Officer Cortazzo "read" the defendant his *Miranda* rights from memory and the defendant said he would answer questions. The defendant said he stole the gun "from some guy's porch nearby" and indicated the marijuana was his.

## DISCUSSION

When the Commonwealth appeals from a suppression order, the reviewing court follows a clearly defined standard of review and considers only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879 (1998). Where the record supports the factual findings of the trial court in ruling on a suppression motion, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003).

The Commonwealth's first claim on appeal is that this court erred in finding Officer Cortazzo did not have reasonable suspicion to conduct a *Terry* frisk of the defendant.

There are three different kinds of interactions between police and common citizens: mere encounters, investigative detentions, and custodial detentions. These interactions require different levels of justification depending on the "nature of the interaction" and whether a suspect is detained. *Commonwealth v. DeHart,* 745 A.2d 633, 636 (Pa. Super. 2000). A mere encounter is as simple as a request for information. There is no level of suspicion required and there is no official compulsion to stop or respond. *Commonwealth v. Key,* 789 A.2d 282 (Pa. Super. 2001). An investigative detention must be supported by reasonable suspicion of some criminal activity and is characterized by a temporary stop or detention but does not involve coercive conditions equivalent to those of a custodial detention. *Id.* The final type of encounter is custodial detention—arrest or its functional equivalent—which must be supported by probable cause. *Id.*

When evaluating the circumstances to determine whether a seizure has been effected, the pivotal inquiry is whether a police officer has restrained the liberty of a citizen, such that a reasonable person, innocent of any crime, would have thought he or she was being restrained had he or she been in the defendant's shoes. *Commonwealth v. Key,* 789 A.2d 282 (Pa. Super. 2001). Although seizure is determined by a totality-of-the-circumstances test, relevant factors include the following:

"[1] the number of officers present during the interaction;

"[2] whether the officer informs the citizen they are suspected of criminal activity;

"[3] the officer's demeanor and tone of voice;

"[4] the location and timing of the interaction;

"[5] the visible presence of weapons on the officer; and

"[6] the questions asked;. . . ." *Commonwealth v. Beasley,* 761 A.2d 621, 624 (Pa.Super. 2000).

Where a police officer parked his patrol car perpendicular to the car in which a defendant was a passenger, such that the headlights of the patrol car shined directly into the passenger's side of the car and proceeded to ask all occupants for identification, the encounter ripened into a seizure; no person in the defendant's position would have felt free to terminate the encounter and depart the scene. *Commonwealth v. Au,* 986 A.2d 864 (Pa. Super. 2009).

In the instant case, Officer Cortazzo limited the defendant's freedom of movement by parking parallel to the parked Nissan such that a door of the Nissan could not fully open without hitting the patrol car. Officer Cortazzo then ordered the defendant to stop moving around inside the Nissan. These two factors, taken together, "ripened" the encounter into a seizure. The defendant's freedom of movement was restricted such that a reasonable person would believe he was being restrained. Even assuming arguendo that the defendant was not seized at this point, he was certainly seized at the time Officer Cortazzo conducted the pat-down search.

There are two circumstances in which a warrantless seizure of a person is constitutionally permissible: where

police have probable cause to believe that a crime is being committed or is about to be committed, or where there is a reasonable belief by police that criminal activity is afoot. *Commonwealth v. Melendez,* 544 Pa. 323, 328, 676 A.2d 226, 228 (1996), citing *Commonwealth v. Hicks,* 434, Pa. 153, 253 A.2d 276 (1969). Reasonable suspicion requires the officer to "articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." *Commonwealth v. Little,* 903 A.2d 1269, 1272 (Pa. Super. 2006). The furtive movements and apparent nervousness of the defendant and the two occupants are insufficient to create reasonable suspicion. See *Commonwealth v Reppert,* 814 A.2d 1196, 1206 (Pa. Super. 2002) (stating nervousness combined with furtive movements does not create reasonable suspicion without additional facts).

A seizure may also be sustained based upon probable cause that a crime is occurring or about to occur. However, Officer Cortazzo's knowledge that the defendant did not have a current driver's license is insufficient. To be guilty of driving while operating privilege is suspended or revoked, 75 Pa.C.S. §1543, the vehicle must actually be in motion.[1] *Commonwealth v. Costa-Hernandez,* 802 A.2d 671 (Pa. Super. 2002). The defendant in this case was seated in the driver's seat of the Nissan, but the car was legally parked and not in motion.

---

1. Driving a vehicle is distinguishable from operating a vehicle, which requires only actual physical control of the vehicle. *Costa-Hernadez,* 802 A.2d at 674.

Alternatively, the law is clear that a warrantless search is proper when incident to a lawful arrest. See *Commonwealth v. Copeland,* 955 A.2d 396 (Pa. Super. 2008). However, Officer Cortazzo's purported knowledge of the defendant's scofflaw warrant is insufficient to sustain the seizure of the defendant. The Commonwealth did not produce a scofflaw warrant in evidence. Officer Cortazzo had not verified the warrant since sometime between late June and early July, approximately one-and-a-half to two months prior to this incident.

Under the circumstances of this case, the failure to verify the warrant to remain active cannot be excused on grounds of exigency or officer safety. Officer Cortazzo testified that he waited approximately 35 minutes for back-up to arrive prior to removing and patting down the occupants of the Nissan. The warrant could have been verified during this period of time. Second, in absence of probable cause or reasonable suspicion to believe some criminal activity was afoot, Officer Cortazzo created his own exigency by remaining present near the Nissan. This is impermissible. See *Melendez, supra* at 331-32, 676 A.2d at 230. Therefore, this Court did not err in holding the seizure of the defendant was not supported by reasonable suspicion or probable cause that a crime had been committed or was about to be committed, or incident to a valid, current arrest warrant.

The Commonwealth's second issue on appeal states this court erred in granting suppression of evidence seized as a result of the search of the Nissan, as well as statements made by the defendant, as being tainted by the initial illegality of the seizure.

Based upon the foregoing analysis regarding the initial seizure of the defendant, this court found the search of the Nissan and the defendant's statements to be tainted by that initial illegality. See *Commonwealth v. Brown,* 700 A.2d 1310, 1319 (Pa. Super. 1997) ("[t]he burden rests on the Commonwealth to demonstrate that the secondary evidence was gathered by means sufficiently distinguishable from any illegality so as to be 'purged of its primary taint' rather than derived from exploitation of the illegality.").

The Commonwealth's final claim on appeal is that this court erred in granting suppression of evidence seized as a result of search of the vehicle based upon *Arizona v. Gant,* _____ U.S. _____, 129 S.Ct. 1710, 173 L.Ed. 485 (2009). *Gant* limits the search of a vehicle incident to the arrest of a recent occupant to circumstances where it is reasonable to believe the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest.

The Commonwealth's claim misstates the analysis of this court. The court declined to rule upon the defendant's *Gant* argument; it was unnecessary for the court to rule upon this suppression theory because the court had already found the search of the vehicle to have been tainted by the initial illegality of the seizure.

For the foregoing reasons, it is respectfully requested that the Commonwealth's appeal be denied.