J-A17040-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK EDWARD CABBAGESTALK, JR., | : | |
| | : | |
| Appellant | : | No. 1230 WDA 2017 |

Appeal from the Judgment of Sentence July 27, 2017
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s): CP-02-CR-0014704-2016

BEFORE: OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:            FILED SEPTEMBER 20, 2018

Mark Edward Cabbagestalk, Jr. ("Cabbagestalk"), appeals from the judgment of sentence imposed following his conviction of possession of a controlled substance (hereinafter "possession"),[1] and the summary offenses of driving while operating privilege is suspended or revoked, turning movements and required signals, and periods for requiring lighted lamps (collectively "the summary offenses").[2]  We reverse in part, concerning the possession conviction, and affirm in part, as to the summary offenses.

On the evening of August 10, 2016, City of Pittsburgh Narcotics Division Detectives Louis Schweitzer ("Detective Schweitzer"), Scott Love ("Detective

_____

[1] See 35 P.S. § 780-113(a)(16).

[2] See 75 Pa.C.S.A. §§ 1543(a), 3334(b), 4302(a)(1).

Love"), and Goob ("Detective Goob")[3] (collectively "the Detectives") were patrolling, in an unmarked vehicle, in the North Side section of Pittsburgh. See N.T. (suppression hearing/non-jury trial), 7/27/17, at 4-5. The Detectives were all in plainclothes. Id. at 5, 12. According to Detective Schweitzer, this was a high-crime area, known for its violent crime and drug activity. Id. at 5, 6. While the Detectives were driving on Federal Street, in the direction of Henderson Street, they saw a black Toyota Camry in front of them, which was being operated by Cabbagestalk. Id. at 6-7. The Camry did not have its taillights illuminated. Id. at 7, 14. The Detectives continued to travel behind the Camry and observed Cabbagestalk turn right onto Henderson Street, without activating his vehicle's turn signal. Id. Detective Love, the driver, then activated the police vehicle's lights and siren. Id. In response, Cabbagestalk pulled the Camry over to a stop.[4] Id. Behind the Detectives' vehicle was another unmarked police vehicle, carrying three plainclothes Narcotics Division Detectives (collectively "the Backup Detectives"), which arrived "almost simultaneously" with the stop. Id. at 9-10.

Detectives Schweitzer and Goob exited their vehicle and approached the Camry. Id. at 7, 14. Though Detective Love and the Backup Detectives

---

[3] Detective Goob's first name is not in the record.

[4] The record from the suppression hearing does not disclose the precise time at which the stop occurred. However, Detective Schweitzer testified that it occurred during his shift that evening, which was from 6:00 p.m. to 2:00 a.m. See N.T., 7/27/17, at 5.

remained in their respective vehicles at this time, they all eventually approached the Camry later in the stop. Id. at 7, 10, 14. When Detective Schweitzer approached the driver's side of the Camry, he noticed that Cabbagestalk was the sole occupant. Id. at 7, 10. Detective Schweitzer, who had his badge displayed, identified himself as law enforcement and asked Cabbagestalk to provide his driver's license, registration, and proof of insurance. Id. at 7. Detective Schweitzer testified that "[w]hile [he] was asking for these documents, [he] could see that [Cabbagestalk] was sweating. [Cabbagestalk's] hands were trembling. [Cabbagestalk] was breathing with short, shallow breaths, and he appeared nervous." Id. at 7-8. Importantly to this appeal, the following exchange then transpired between the Commonwealth and Detective Schweitzer:

> Q. [The prosecutor]: Did [Cabbagestalk] say anything to you?
>
> A. [Detective Schweitzer]: Well, he looked around in the vehicle[,] back and forth. Then he looked down at his lap and said ["]I don't have one[, i.e., a driver's license,] [i]t's suspended.["] When [Cabbagestalk] looked down at his lap[,] I could see in his left pocket[5] there was a large bulge.
>
> Q. From your experience[,] what did you conclude from this interaction?
>
> A. Based on my training and experience[, Cabbagestalk's] behavior was consistent with an individual that was carrying a weapon.
>
> Q. What specifically made you feel that way?

_____

[5] Specifically, Detective Schweitzer was referring to the left front pocket of the pair of shorts that Cabbagestalk was wearing. See N.T., 7/27/17, at 10, 17.

A. His nervous behavior, the fact that we were in a high[-]crime area.

Id. at 8 (footnote added). Based on these observations, Detective Schweitzer asked Cabbagestalk to exit his vehicle and walk towards the rear of the vehicle, where Detectives Love and Goob were waiting. Id. Detective Schweitzer then informed Detective Love of his observations of Cabbagestalk's behavior and the bulge in his shorts pocket. Id. at 8, 15.

Detective Love performed a pat-down search of Cabbagestalk's person for weapons. Id. at 8-9, 15. Detective Love testified that while he was patting Cabbagestalk down, he "immediately felt[,]" in Cabbagestalk's right front shorts pocket, "what I knew to be round, circular objects that I knew through my training and experience to be pills."[6] Id. at 16. Detective Love then removed 3½ pills from Cabbagestalk's right pocket,[7] which later tested positive for oxycodone. Id. at 17. Detective Love asked Cabbagestalk whether he had a prescription for the pills; Cabbagestalk replied that he did not. Id. Also during Detective Love's pat-down, he discovered that the "large bulge" in Cabbagestalk's left front shorts pocket turned out to be $1,690 in U.S. currency. Id. The Detectives then placed Cabbagestalk under arrest,

_____

[6] Detective Love did not specify what type of pills that he "immediately" knew the circular objects to be.

[7] Detective Love stated that the pills were about the size of a pencil eraser, and were not contained in any packaging. See N.T., 7/27/17, at 18.

and Detective Schweitzer confirmed that Cabbagestalk's driver's license was, in fact, suspended. Id. at 9.

After the Commonwealth charged Cabbagestalk with possession and the summary offenses, he filed a Motion to suppress on June 27, 2017. Therein, he asserted that the search of his person was unlawful and unsupported by reasonable suspicion that he was armed and dangerous, and therefore, the contraband seized from his person must be suppressed as fruit of the poisonous tree.

On July 27, 2017, the trial court conducted a hearing on Cabbagestalk's Motion to suppress. After considering testimony from Detectives Schweitzer and Love, and argument from counsel for the parties, the trial court denied

the Motion, without elaboration as to its reasons.[8]

Cabbagestalk elected to proceed to a non-jury trial, at the close of which the trial court convicted him of all counts. The trial court then immediately sentenced him, on the possession conviction, to three to six months in jail,[9] followed by one year of probation. As to the convictions of the summary offenses, the trial court imposed a total penalty of $200 in fines. Cabbagestalk timely filed a Notice of Appeal, after which the trial court filed a Pa.R.A.P. 1925(a) Opinion.[10]

_____

[8] Although the trial court stated that it had reviewed and understood the applicable law, see N.T., 7/27/17, at 22-23, the court did not explain its reasons for its ruling or make findings of fact. Pennsylvania Rule of Criminal Procedure 581(I) mandates, in relevant part, that "[a]t the conclusion of [a suppression] hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights ...." Pa.R.Crim.P. 581(I) (emphasis added). Though the trial court's failure to abide by Rule 581(I) has not impeded our appellate review due to the court's subsequent explanation of its rationale in its Pa.R.A.P. 1925(a) Opinion, our Pennsylvania Supreme Court has strongly disapproved of the failure of trial courts to abide by the "unambiguous mandate" of Rule 581(I). Commonwealth v. Millner, 888 A.2d 680, 688-89 (Pa. 2005) (explaining the purpose of the Rule and "recogniz[ing] that, unfortunately, it is not uncommon for suppression judges to fail to comply with this directive[,]" but declining to remand for compliance with Rule 581(I) where review was not hampered, and for judicial economy). But see also Commonwealth v. Grundza, 819 A.2d 66, 68 n.1 (Pa. Super. 2003) (stating that "the filing of a 1925(a) opinion is no substitute for the failure to make findings of fact and conclusions of law on the record at the conclusion of a suppression hearing in accordance with Pa.R.Crim.P. 581(I).").

[9] Due to Cabbagestalk's time served, the trial court immediately paroled him.

[10] The trial court did not order Cabbagestalk to file a Rule 1925(b) concise statement of errors complained of on appeal.

Cabbagestalk now presents the following issues for our review:

   I.   Whether the trial court erred in not granting [] Cabbagestalk's [M]otion to suppress the 3½ pills of oxycodone found loosely in the right front coin pocket of his pants[,] when the totality of the circumstances clearly demonstrated that the police did not have a reasonable belief that [] Cabbagestalk was in possession of a weapon?

   II.   Whether the trial court erred in not granting [] Cabbagestalk's [M]otion to suppress the 3½ pills of oxycodone found loosely in the right front coin pocket of his pants[,] when the plain-feel doctrine clearly did not apply?

Brief for Appellant at 5.[11]

      [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is de novo. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

Commonwealth v. Yandamuri, 159 A.3d 503, 516 (Pa. 2017) (citations omitted).

In his first issue, Cabbagestalk argues that the frisk of his person was unlawful because Detective Schweitzer did not possess the requisite

_____

[11] Cabbagestalk challenges only his possession conviction; he does not challenge his convictions of the summary offenses. See, e.g., Brief for Appellant at 48 (wherein Cabbagestalk asks this Court to "revers[e] his drug [possession] conviction and vacat[e] his judgment of sentence in that regard."); see also id. at 5.

reasonable suspicion that Cabbagestalk was armed and dangerous, and therefore, the trial court should have suppressed the contraband seized from his person. See Brief for Appellant at 18-37. We agree.

"It is well settled that an officer may pat-down an individual whose suspicious behavior he is investigating on the basis of a reasonable belief that the individual is presently armed and dangerous to the officer or others." Commonwealth v. Gray, 896 A.2d 601, 605-06 (Pa. Super. 2006) (citing Terry v. Ohio, 392 U.S. 1 (1968) (holding that police may conduct an investigatory detention and frisk if they have reasonable suspicion that criminal activity is afoot)). In order to prove reasonable suspicion, "the police officer must be able to point to specific and articulable facts[,] and reasonable inferences drawn from those facts[,] in light of the officer's experience." Commonwealth v. Cook, 735 A.2d 673, 677 (Pa. 1999). "The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." Commonwealth v. Walls, 53 A.3d 889, 893 (Pa. Super. 2012).

> Further, the delicate balance between protecting the right of citizens to be free from unreasonable searches and seizures, on the one hand, and protecting the safety of our citizens and police officers[,] by allowing police to make limited intrusions on citizens while investigating crime, on the other hand, requires additional considerations when the police have a reasonable suspicion that a person may be armed. ...

* * *

> Thus, under Terry …[,] a police officer may frisk an individual during an investigatory detention when the officer believes, based on specific and articulable facts, that the individual is armed and dangerous. When assessing the reasonableness of an officer's decision to frisk a suspect during an investigatory detention, an appellate court does not consider the officer's unparticularized suspicion or "hunch" but rather[,] the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

Commonwealth v. Stevenson, 894 A.2d 759, 771-72 (Pa. Super. 2006) (internal citations, ellipses, and quotation marks omitted). But see also Cook, 735 A.2d at 676 (stating that although mere hunches on the part of an officer are insufficient to meet this burden, "a combination of innocent facts, when taken together, may warrant further investigation by the police officer.").

In its Rule 1925(a) Opinion, the trial court advanced the following rationale in support of its denial of Cabbagestalk's suppression Motion:

> Here, the [D]etectives observed two violations of the Motor Vehicle Code – unilluminated taillights and turning without the use of a turn signal – which allowed them to stop [Cabbagestalk's] vehicle. Detective Schweitzer then testified that[] his training and experience, [Cabbagestalk's] nervous behavior, and their location in a high[-]crime area[] led him to believe that the large bulge he observed in [Cabbagestalk's] front pocket was a weapon. Accordingly, [Detective Schweitzer] reasonably believed a frisk for weapons was necessary to protect the safety of himself and his fellow officers, and the search was reasonable under the Fourth Amendment.

Trial Court Opinion, 11/7/17, at 3 (unnumbered).

Cabbagestalk challenges the trial court's aforementioned rationale, stating that

while the instant incident occurred in a high-crime area and the nature of the suspected criminal activity is a proper consideration, the record reveals that the incident did not occur late at night or early in the morning,[12] and the [Detectives] stopped [] Cabbagestalk simply because he committed two minor traffic offenses, nothing less and nothing more. Even though this was just a routine traffic stop, ... Cabbagestalk was confronted by six narcotics detectives, at least three of which were surreptitiously wearing plain clothes, traveling in two unmarked police vehicles. In other words, as this surely did not appear to the reasonable person to be a routine traffic stop, the fact that [] Cabbagestalk, a reasonable person, showed signs of nervousness was far from exceptional or remarkable. Indeed, any person suddenly stopped by the police under such unsettling circumstances naturally would be expected to feel anxious and exhibit nervous behavior. Finally, despite the legitimate need of police officers to be cautious and protect themselves, an officer cannot, simply by observing some item causing a "bulge" in a person's clothing, perform a protective frisk where the nature of the bulge or the surrounding circumstances do not reasonably support the conclusion that the person is armed and dangerous. ... In the end, the police decision to frisk [] Cabbagestalk for a weapon was unreasonable based on the totality of the circumstances.

Brief for Appellant at 19-20 (footnote added).

Initially, we emphasize that Detective Schweitzer never identified the "large bulge" in Cabbagestalk's left front shorts pocket as being among the factors that caused him to believe that Cabbagestalk was armed and dangerous. Rather, Detective Schweitzer identified only "[Cabbagestalk's] nervous behavior, [and] the fact that we were in a high[-]crime area." N.T., 7/27/17, at 8. The trial court likewise identified only these two facts (as well

_____

[12] Cabbagestalk points out that the exact time of the stop was not established. Brief for Appellant at 26 n.8. He contends that because Detective Schweitzer testified that there were other people on the street at the time of the stop, the "only reasonable inference" to draw from this testimony was that the stop did not occur late at night or in the early morning hours. Id.

as Detective Schweitzer's training and experience) as establishing reasonable suspicion; it did not cite the bulge in Cabbagestalk's shorts pocket. See Trial Court Opinion, 11/7/17, at 3 (unnumbered). Nevertheless, nowhere did Detective Schweitzer indicate that the bulge was consistent with a firearm.[13] Cf. Commonwealth v. E.M., 735 A.2d 654, 662 (Pa. 1999) (holding that the police had reasonable suspicion to suspect that the defendant was armed, in order to conduct a lawful Terry frisk, where the arresting officer "specifically testified that he noticed a bulge in [defendant's] front pocket which was characteristic of a semi-automatic weapon.").

It is well established that, absent more, "a police officer's assessment that the occupants of a vehicle appear nervous does not provide reasonable suspicion[.]" Commonwealth v. DeHart, 745 A.2d 633, 637 (Pa. Super. 2000) (citing Commonwealth v. Sierra, 723 A.2d 644 (Pa. 1999)); see also Commonwealth v. Reppert, 814 A.2d 1196, 1206 (Pa. Super. 2002) (en banc) (stating that "[i]n Sierra and DeHart, our Courts pronounced an officer's assessment of nervous demeanor palpably insufficient to establish reasonable suspicion of a citizen's involvement in criminal activity, even when viewed in combination with other indicia of potential criminal acts." (emphasis added)). Further, our Courts have repeatedly emphasized that mere presence in a high-crime area is alone insufficient to establish reasonable suspicion. See In re D.M., 781 A.2d 1161, 1163 (Pa. 2001); Commonwealth v. Ayala,

---

[13] Rather, Detective Schweitzer testified that "[Cabbagestalk's] behavior was consistent with an individual that was carrying a weapon." N.T., 7/27/17, at 8 (emphasis added).

791 A.2d 1202, 1209 (Pa. Super. 2002); Commonwealth v. Key, 789 A.2d 282, 289 (Pa. Super. 2001); Commonwealth v. Kearney, 601 A.2d 346, 348 (Pa. Super. 1992).

Under the totality of the circumstances presented herein, we cannot conclude that Detective Schweitzer articulated sufficient facts from which he could reasonably infer that Cabbagestalk was armed and dangerous. Cabbagestalk's nervousness, even where the stop took place in a high-crime area, is not enough to establish reasonable suspicion.[14]   See, e.g., DeHart, supra; In re D.M., supra; Reppert, supra.   Accordingly, we conclude that the trial court erred in failing to suppress the contraband seized from Cabbagestalk during the unlawful Terry frisk.[15]

_____

[14] The Commonwealth's reliance on Commonwealth v. Buchert, 68 A.3d 911 (Pa. Super. 2013), is misplaced, as it is factually distinguishable.  See id. at 916-17 (finding reasonable suspicion to conduct a Terry frisk existed where "[t]he combination of [the defendant's] furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and the night[]time stop, was sufficient to warrant a reasonable police officer to believe that his safety was in danger and that [the defendant] might gain immediate control of a weapon." (emphasis added)); see also id. at 916 (distinguishing this Court's decision in Commonwealth v. Cartagena, 63 A.3d 294 (Pa. Super. 2013) (en banc), which involved "a night[]time stop where extreme nervousness was exhibited[,]" and the en banc panel held that this did not give rise to reasonable suspicion to perform the protective weapons search therein, and emphasizing that "Cartagena did not involve furtive movements.").  In the instant appeal, there was no evidence presented that Cabbagestalk made any furtive movements.

[15] Because of our disposition on Cabbagestalk's first issue, we need not address his second issue, pertaining to the improper application of the "plain feel" doctrine to the narcotics found in his pocket.  However, we note that the Commonwealth concedes this issue may be meritorious.  We appreciate the candor of the Allegheny County District Attorney's Office in this regard, which exemplifies its integrity.

We therefore reverse the judgment of sentence as to the possession conviction. However, as Cabbagestalk does not challenge his convictions of the summary offenses, we affirm these convictions.

Judgment of sentence reversed in part and affirmed in part; jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/20/2018