**Commonwealth v. Bryant**

44

C.P. of Monroe County, no. 972 CR 2010.

*Jeremy Bolles,* for Commonwealth.
*Jason M. Leon,* for defendant.

SIBUM, *J.*, January 28, 2011—Defendant Eddie Lee Bryant has been charged with criminal conspiracy to commit possession with intent to deliver (18 Pa.C.S.A. §903(a)(1)), possession with intent to deliver heroin (35 P.S. §780-113(a)(30)), possession of marijuana (35 P.S. §780-113(a)(31)(i)), possession of drug paraphernalia (35 P.S. §780-113(a)(32)), and intent to possess a controlled substance by person not registered (35 P.S. §780-113(a)(16)), in connection with events that allegedly occurred on May 13, 2010. A preliminary hearing was held on June 11, 2010 and the charges were bound over for court. Defendant appeared for formal arraignment on July 19, 2010 and entered a plea of not guilty. A criminal information was filed that same day charging defendant with the above named crimes. Defendant filed a petition for habeas corpus, omnibus pretrial motion, and motion for bail modification on October 27, 2010. A hearing was held on December 16, 2010 at which time counsel for both the commonwealth and defendant agreed to submit testimony on the preliminary hearing transcripts.

The relevant facts as presented through the preliminary hearing transcripts are as follows. On May 13, 2010 at approximately 4:05 a.m., Corporal Thomas Hothouse ("Corporal") and Trooper Eric Randazzo ("Trooper") of the Pennsylvania State Police were traveling north on Interstate 380 in a patrol car [N/T, 6/11/10, p. 7.][1]. Corporal and Trooper passed a van bearing New York State plates with an inoperable passenger's side parking lamp. *Id.* at 6, 49. Corporal pulled over the patrol car in to the center median of the interstate and waited for the vehicle to pass.

---

1. Reference to testimony provided at the preliminary hearing held on June 11, 2010 will be cited as [N/T, 6/11/10, p.___.]

*Id.* at 7. Corporal and Trooper then conducted a traffic stop of the offending vehicle. *Id.*

Upon approaching the vehicle, Corporal and Trooper observed four total occupants in the van. *Id.* Corporal approached the driver side and made contact with the driver of the vehicle who appeared extremely nervous. *Id.* at 7, 48. Corporal obtained the driver's license and registration and returned to the patrol car to run the information. *Id.* at 7. Meanwhile, Trooper approached the passenger side of the vehicle and made contact with a black male reclining in the front passenger seat which was fully extended ("defendant"). *Id.* Trooper asked defendant to roll down the window so that he could speak to him, in response to which defendant stated that the window did not work. *Id.* Trooper then asked defendant to step out of the vehicle, and defendant complied. *Id.* Once outside the vehicle, Trooper requested defendant walk to the rear of the van and asked for his information. *Id.* at 8. Trooper testified that he routinely requests identification from people that he pulls over to ascertain if the person is subject to a warrant. *Id.* at 14. In response to Trooper's request for identification, defendant identified himself as Edwin Brown. *Id.* at 8, 19. Defendant then related that he may have his identification in a bag behind the rear seat in the van. *Id.* at 8. Trooper positioned himself right next to the defendant with his flashlight illuminated. *Id.* Defendant opened the rear hatch door and Trooper observed a clear plastic bag containing suspected marijuana on top of other items located behind the third row seat. *Id.* at 8, 30. Defendant then grabbed the bag of suspected marijuana and threw it over the third row seat. *Id.* at 8. Defendant was placed in handcuffs and advised

that he was under arrest for possession of marijuana. *Id.*

After Trooper placed defendant in their patrol car, Corporal and Trooper returned to the van to speak with the driver again and to address the two occupants in the back seat. *Id.* As Trooper approached the driver's side of the vehicle, he witnessed furtive movement from the two back seat passengers. *Id.* at 8-9. The passengers were sitting in the third row seat; the second row seats were not present in the vehicle. *Id.* at 25. Trooper made contact with the driver and advised her to unlock the doors. *Id.* at 9. The driver complied but the driver's side sliding door did not open. *Id.* Trooper then walked around the rear of the van to the passenger side sliding door and opened the sliding door. *Id.*

Once the door was opened, the driver side backseat passenger, later identified as John Portalatin, threw a large clear plastic bag containing suspected heroin underneath the third row seat. *Id.* at 10. The other passenger, later identified as Jason Rosario, was positioned in the passenger side third row seat directly behind defendant's passenger seat. Trooper then ordered the driver and both passengers to exit the vehicle and advised them that they were under arrest for possession of heroin. *Id.* A terry frisk of all three individuals was conducted but no contraband was found. *Id.* A total of $60 to $80 dollars was recovered from the four occupants. *Id.* at 39. Defendant and the other occupants of the van were transported to PSP Swiftwater barracks to be identified. *Id.* at 10. Once at the barracks, defendant was identified as Eddie Lee Bryant. *Id.* at 7.

Upon returning to the station, Corporal and Trooper broke down the plastic bundle of suspected narcotics

recovered from the van. *Id.* It contained 330 small, plastic, stamped baggies of suspected heroin. *Id.* at 10, 45. Corporal testified that from his training and experience with highway interdiction cases, the heroin found in the vehicle was consistent with amounts used for distribution. *Id.* at 42-43.

Corporal and Trooper also recovered the clear plastic baggie of suspected marijuana that defendant threw over the third row seat. *Id.* at 11. Located within the plastic baggie of suspected marijuana was a small bag of cocaine. *Id.* The suspected narcotics were field tested at the barracks through a NIK test and were positive for heroin, cocaine and marijuana. *Id.* Laboratory tests later confirmed the presence of a total of 40.38 grams of heroin, 0.31 grams of cocaine and 1.2 grams of marijuana. [Omnibus hearing, 12/16/10, commonwealth's Exhibit 2.]

After arresting the occupants of the van, the vehicle was towed and secured awaiting application of a search warrant. [Affidavit of probable cause, 5/13/10, p.2.] A search warrant was requested on May 13, 2010. *Id.* No additional contraband was discovered during the search of the van itself. [N/T, 6/11/10, p.29.] The vehicle was identified as belonging to Susan Smith from Binghamton, N.Y. *Id.* at 31. Trooper was advised that Susan Smith was defendant's girlfriend, yet he was not aware of Smith's relationship with the driver. *Id.* at 31-32.

## DISCUSSION

### 1. *Motion to Suppress*

Pennsylvania Rules of Criminal Procedure provide that a defendant may move to suppress any evidence alleged

to have been obtained in violation of the defendant's rights. Pa.R.Crim.P. §581(A). The commonwealth carries the burden of going forward with the evidence and establishing that the challenged evidence was not obtained illegally. Pa.R.Crim.P. §581 (H). The commonwealth must meet its burden by a preponderance of the evidence. *Commonwealth v. Ruey*, 586 Pa. 230, 239, 892 A.2d 802, 807 (Pa. 2006).

Defendant avers that police lacked probable cause or reasonable suspicion to detain defendant and order him from the vehicle. Defendant specifically argues that he was unlawfully ordered, as a passenger, out of the vehicle without any reasonable suspicion that criminal activity was afoot. Defendant also challenges the seizure of his person, claiming that there were no attendant circumstances or facts that indicate that defendant was engaged in the possession of or distribution of controlled substances. We will address these two issues in turn.

The fourth amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures. *Commonwealth v. Campbell,* 862 A.2d 659, 663 (Pa. Super. 2004). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Id.*

In Pennsylvania, courts recognize three categories of police officer and citizen interaction:

The first of these is a "mere encounter" (or request for

information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention", must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or custodial detention must be supported by probable cause. An investigative detention constitutes a seizure of the person and must be supported by reasonable suspicion that those detained are engaged in criminal activity. *Commonwealth v. Carter*, 779 A.2d 591, 593 (Pa. Super. 2001).

Initially, Corporal Hothouse and Trooper Randazzo personally witnessed the vehicle in which defendant was a passenger to have an inoperable parking light in violation of the Pennsylvania Motor Vehicle Code. This motor vehicle violation, by itself, gave Corporal and Trooper reasonable suspicion to initiate a traffic stop.

Once the vehicle in which defendant was a passenger was lawfully stopped, Trooper was legally permitted to request defendant to step from the car. Our Superior Court, as well as the United States Supreme Court, has held that "[f]ollowing a lawful traffic stop, an officer may order both the driver and passengers of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable suspicion that criminal activity is afoot." *Commonwealth v. Pratt*, 930 A.2d 561, 564 (Pa. Super. 2007) (citing *Commonwealth v. Brown*, 654 A.2d 1096 (Pa. Super. 1995). In so holding, the Superior Court opined that "in all cases involving lawful traffic stops, it is not unreasonable for an officer to request that the passengers

in a lawfully stopped car exit the vehicle so that the safety of the officer is, if not insured, at least better protected." *Id.*

Trooper was further acting within the law when he requested defendant's name and identification. The Superior Court, in *Commonwealth v. Campbell*, 862 A.2d 659 (Pa. Super. 2004), held that a passenger in a vehicle did not have a reasonable expectation of privacy in his identification, and thus the police officer did not violate defendant's Fourth Amendment right against unreasonable searches and seizures when he asked the passenger to identify himself after a traffic stop, regardless of whether there is reasonable suspicion that the passengers are engaged in criminal activity. *Id.* at 664.

In light of the Superior Court's opinions in *Brown* and *Campbell*, supra., defendant's argument that Trooper was without authority to require defendant, as a passenger, out of the vehicle and to provide identification, fails. Trooper acted properly in directing defendant to alight from the van, regardless of whether probable cause or reasonable suspicion existed. Trooper also acted properly in asking defendant to provide his name and identification. Having found that Trooper was lawfully permitted to request defendant step from the vehicle and provide identification, defendant's suppression motion on these grounds fails.

We next turn to defendant's argument that insufficient evidence exists to find that he possessed the drugs found in the van. Specifically, defendant challenges the seizure of his person and argues that there are no facts that indicate that he was engaged in the possession of or distribution of controlled substances. We disagree.

Defendant's argument is predicated on the proposition that Trooper did not have probable cause to arrest. "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Commonwealth v. Williams,* 941 A.2d 14, 27 (Pa. Super. 2008).

In this case, Trooper approached the van and observed defendant lying fully reclined in the passenger seat: Trooper then attempted to speak with defendant; however, defendant was unable to roll down his window to communicate with the Trooper. Trooper requested defendant step out of the car. Defendant complied but was unable to produce identification. Defendant proceeded to walk to the back of the vehicle and provided a name, albeit false, to Trooper. Defendant then volunteered the information that he might have his identification in a bag in the back of the vehicle. Defendant proceeded to open the back hatch of the van where Trooper observed a bag of suspected marijuana in plain view.

Defendant immediately grabbed the bag and threw it forward over the rear row seat of the van in an attempt to hide the bag from Trooper. In doing so, Trooper observed defendant with the bag in his possession. Through the Trooper's training and experience, he identified the bag as containing suspected drugs. Defendant was therefore lawfully arrested in connection with these events. Defendant's Motion to Suppress will be denied.

2. *Motion for Habeas Corpus Relief*

In his motion for habeas corpus relief, defendant argues that the commonwealth has failed to produce sufficient evidence to establish a prima facie case against him to support all of the charges. In response, the commonwealth argues that a prima facie case exists as to each of the material elements of the crimes charged and establishes sufficient probable cause to warrant the belief that defendant committed the offenses. We will address the charges simultaneously, with the exception of the criminal conspiracy charge, as all four charges are possessory offenses and similar in nature.

When a criminal defendant seeks to challenge the sufficiency of evidence presented against him, he may do so by filing a writ of habeas corpus with the court of common pleas. *Commonwealth v. Carmody*, 799 A.2d 143, 146 (Pa. Super. 2002). In such instances, the habeas court acts in the capacity of a reviewing court to assess whether sufficient evidence exists to require the defendant to be brought to trial. *Id.* at 146-47.

"At the pre-trial stage of a criminal prosecution, it is not necessary for the commonwealth to prove the defendant's guilt beyond a reasonable doubt." *Commonwealth v. Huggins*, 575 Pa. 395, 402, 836 A.2d 862, 866 (Pa. 2003). Rather, the commonwealth establishes a prima facie case when it produces evidence of "each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense." *Id.* A prima facie case can be established by evidence that, if accepted as true, would warrant the trial judge to allow the case to go to the jury. *Commonwealth v. Martin*, 727 A.2d 1136, 1142 (Pa. Super. 1999), allocator denied, 745 A.2d 1220 (1999). In deciding if a prima facie

case has been made, any inferences reasonably drawn from the evidence in the record that would support a guilty verdict are to be given effect and "the evidence must be read in the light most favorable to the commonwealth's case." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001). The weight and credibility of the evidence are not factors at this pre-trial stage. *Commonwealth v. Wojdak*, 502 Pa. 359, 370, 466 A.2d 991, 997 (Pa. 1983).

a. *Possessory Offenses - (1) Intent to Possess a Controlled Substance; (2) Possession with Intent to Deliver; (3) Possession of Marijuana: and (4) Possession of Drug Paraphernalia*

The defendant is charged with four individual counts of possession pursuant to the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §780-113(a), subsections (16), (30), (31), and (32) for intent to possess heroin by a person not registered, possession with intent to deliver heroin, possession of marijuana, and possession of drug paraphernalia, respectively. This statute provides as follows:

(a) The following acts and the causing thereof within the commonwealth are hereby prohibited:

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate state board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

(30) Except as authorized by this act, the manufacture,

delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate state board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

(31)Notwithstanding other subsections of this section, (i) the possession of a small amount of marijuana only for personal use.

(32)The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act. 35 P.S. §780-113(a)(16), (30), (31), (32).

In drug possession cases, the commonwealth has the burden of proving that defendant had knowing or intentional possession of a controlled substance and, if the substance is not found on the defendant's person, they must satisfy that burden by proof of constructive possession. *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 549-50 (Pa. 1992). The Pennsylvania Supreme Court has defined constructive possession as "the ability to exercise a conscious dominion over the illegal substances: the power to control the contraband and the intent to exercise that control." *Commonwealth v. Macolino*, 503 Pa. 201, 205, 469 A.2d 132, 134 (Pa. 1983). The intent to maintain a conscious dominion may be inferred from the totality of

the circumstances and a defendant's possession of drugs or contraband may be established by use of circumstantial evidence. *Id.*

Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access. *Commonwealth v. Mudrick,* 510 Pa. 305, 309, 507 A.2d 1212, 1214 (Pa. 1986). "Critical to a finding of constructive possession is evidence of shared 'access' and 'control' of the area where the contraband is found." *Commonwealth v. Rodriquez,* 618 A.2d 1007, 1008 (Pa. Super. 1993), citing *Mudrick,* supra. However, "evidence that the defendant was one of a group of persons on the scene where the contraband was found is insufficient to support an inference of constructive possession." *Com. v. Luddy,* 422 A.2d 601, 605 (Pa. Super. 1980). "The commonwealth must introduce evidence demonstrating defendant's participation in the drug-related activity or evidence connecting defendant to the areas where the drugs are kept." *Commonwealth v. Meeker,* 43 Pa. D&C 4th 267, 271 (Miller, J. 1999), citing *Macolino,* supra.

Here, defendant was a passenger in a vehicle that was stopped on Interstate 380 at approximately 4:05 a.m. Three bricks of heroin and a bag of marijuana were observed in plain view inside the van in which defendant and the other passengers were occupying. Manipulation of the bag containing suspected marijuana by Trooper Randazzo revealed the bag to also contain a small bag of suspected cocaine. Consequently, the suspected drugs were determined to be heroin, cocaine and marijuana. For the reasons that follow, we find that the commonwealth has established a prima facie case that defendant knowingly and intentionally possessed the heroin, marijuana and

cocaine found in the van.

With respect to the marijuana and cocaine, defendant opened the rear hatch door of the van and grabbed the small plastic bag containing the suspected marijuana and cocaine with his hand. He then proceeded to throw it over the third row seat. Trooper testified that when defendant opened the rear door, he immediately viewed the contraband laying on top of several clothing bags in plain view. Not only was the contraband within immediate reach of defendant, but defendant physically held the bag in his hand and then threw it in attempt to hide it from the Trooper. As such, we find that not only did defendant have the ability and intent to control the marijuana, but that he had actual physical possession of it, as well.

Turning to the heroin, the interior configuration of the van allowed defendant to be within close proximity of Portalatin, Rosario and the heroin. Defendant was seated in the front passenger seat of the van. Defendant's seat was fully reclined, and Trooper testified that the middle seats of the van were removed. This left a space between the front seats and the third row seats where Portalatin and Rosario were seated. Trooper testified that upon opening the passenger-side sliding door, he witnessed Portalatin throw with his right hand a large, clear, plastic bundle containing suspected heroin underneath the third row seat. Trooper also testified that he observed the suspected heroin in plain view.

The drugs were discovered in plain view, in an area open and easily accessible by all occupants of the van. Defendant was in close proximity to the heroin and had the power to control the contraband. Furthermore, defendant's

actions with respect to the marijuana and cocaine support the conclusion that defendant had intentional constructive possession of the heroin. Specifically, defendant's actions in attempting to hide the marijuana and cocaine from Trooper by throwing it over the rear seat support the conclusion that defendant was aware of the drugs in the vehicle and intended to possess same. In view of the totality of the circumstances, the commonwealth has offered sufficient testimony to establish a prima facie case that defendant had constructive possession of the heroin. Defendant's motion for habeas corpus relief as to possession of a controlled substance will be denied.

Turning next to the charge of "possession with intent to deliver" under subsection (a)(30), the commonwealth must establish that defendant possessed the heroin with the intent to deliver the drugs. Intent to deliver can be inferred from an examination of all of the facts and circumstances surrounding the possession of the substance. *Commonwealth v. Torres*, 617 A.2d 812, 814 (Pa. Super. 1992); *Commonwealth v. Perez*, 931 A.2d 703, 708 (Pa. Super. 2007). "Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." *Perez*, 931 A.2d at 708. Thus, possession with intent to deliver can be inferred from the surrounding circumstances such as lack of paraphernalia for consumption. *Torres*, 617 A.2d at 814.

In this case, Trooper testified to seizing three bundles of heroin. Upon breaking down the plastic bundles of heroin, the bundles contained 330 individual, plastic stamped baggies of heroin. Corporal Hothouse testified that from

his training and experience as a police officer, the bags of heroin were consistent with distribution. Furthermore, no paraphernalia used for ingesting the heroin was located either on defendant or in the van. Sufficient evidence exists to conclude that the heroin was intended for distribution. As such, defendant's motion will be denied.

As to the count for "possession of marijuana" under subsection (a)(31), the commonwealth must show that defendant possessed a small amount of marijuana only for personal use. For purposes of this subsection, thirty (30) grams of marijuana or eight (8) grams of hashish shall be considered a small amount of marijuana. §780-113(a)(31). Laboratory tests confirmed the presence of 1.2 grams of marijuana, an amount clearly less than thirty grams. Having determined that defendant possessed the marijuana and that the marijuana qualifies as a small amount, the commonwealth has met its burden. Defendant's motion for habeas corpus relief as to "Possession of Marijuana" will be denied.

Finally, with respect to the charge of "possession of drug paraphernalia" under subsection (a)(32), the commonwealth must show that defendant possessed with the intent to use drug paraphernalia. Drug paraphernalia is defined as equipment, products or materials of any kind which are used, intended for use or designed for use in packaging a controlled substance in violation of the Controlled Substance, Drug, Device and Cosmetic Act. 35 P.S. §780-102. It includes capsules, balloons, envelopes and other containers used, intended for use or designed for use in packaging small quantities of controlled substances. 35 P.S. §780-102(9). Ordinary packaging material, including bags used to package or store marijuana, can

be drug paraphernalia. *Commonwealth v. Pitner*, 928 A.2d 1104, 1108 (Pa. Super. 2007).

Here, 330 small, plastic, stamped baggies of heroin were contained in three large, plastic bundles or bricks. The marijuana was found in a clear, plastic baggie. That baggie also contained a second plastic bag holding cocaine. Defendant's use of the plastic bags to package the heroin, marijuana and cocaine is sufficient evidence to show that defendant possessed drug paraphernalia. The commonwealth has met their burden and defendant's motion will be denied.

b. *Criminal Conspiracy to Commit the Act of Possession With Intent to Deliver*

Defendant has also been charged with one count of criminal conspiracy to commit the act of possession with intent to deliver pursuant to 18 Pa.C.S.A. §903(a)(1). Section 903 provides as follows:

(a) A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime. §903(a)(1).

Furthermore, "[n]o person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired." §903(e). Therefore, to sustain a conviction for

criminal conspiracy, the commonwealth must establish that "(1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime." *Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. Super. 2004). An "overt act" is defined as an act done in furtherance of the object of the conspiracy. *Commonwealth v. Prep.* 142 A.2d 460, 465 (Pa. Super. 1958).

Direct evidence of the conspiratorial agreement or the defendant's intent is rarely available. *Id.* Consequently, both the agreement and defendant's intent are almost always shown through circumstantial evidence, such as the overt acts of the co-conspirators and the relations, conduct, or circumstances of the parties. *Id.* However, mere association with perpetrators, presence at a scene, or knowledge of a crime is insufficient to establish that defendant was part of a conspiratorial agreement to commit a crime. *Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002).

In the case before the court, the commonwealth argues that defendant agreed with the passengers of the van to commit the crime of possession with intent to deliver. We agree.

Here, defendant agreed to get in to a vehicle with three other occupants and travel from New York with large quantities of heroin, as well as cocaine and marijuana in plain view of all occupants. The heroin was pre-packaged in 330 individual packages consistent with distribution.

Having already determined that defendant knew of or intended to possess the heroin with the intent of delivering it, defendant's actions of getting in the vehicle with these passengers and traveling with the packaged drugs establishes defendant's agreement to possess the drugs with the intent of delivering them. Taking such action constitutes a substantial step towards committing the crime of possession with intent to deliver. Having met all the requisite elements of conspiracy, the commonwealth has established a prima facie case as to criminal conspiracy. Defendant's motion will be denied.

Accordingly, we enter the following order.

## ORDER

And now, January 28, 2011, upon consideration of defendant's omnibus pretrial motion, it is ordered as follows:

1. Defendant's motion to suppress is denied.

2. Defendant's motion for habeas corpus relief is denied.

3. This case is hereby listed for the March 2011 criminal term of court.

4. Defendant shall appear for the call of the criminal trial list on February 15, 2011 at 8:30 a.m. in courtroom No. 1, Monroe County Courthouse, Stroudsburg, Pennsylvania.

5. Defendant shall also appear for the call of the criminal trial list on March 8, 2011 at 9:00 a.m. in courtroom No. 3, Monroe County Courthouse, Stroudsburg, Pennsylvania.

6. Finally, defendant shall appear for trial on March 9, 2011 at 9:00 a.m. in courtroom No. 1, Monroe County Courthouse, Stroudsburg, Pennsylvania.