COMMONWEALTH of Pennsylvania, Appellant,

v.

Rashaan CAMPBELL.

Superior Court of Pennsylvania.

Argued Jan. 27, 2004.

Filed Nov. 22, 2004.

Chuck E. Washburn, Asst. Dist. Atty., Greensburg, for Com., appellant.

BEFORE: FORD ELLIOTT, JOYCE, and TAMILIA, JJ.

## OPINION BY FORD ELLIOTT, J.:

¶ 1 The Commonwealth takes this appeal from the January 28, 2003 order granting appellee Rashaan Campbell's motion to suppress evidence following a stop of a vehicle in which he was a passenger.[1] After careful review, we reverse.

¶ 2 The uncontroverted testimony at the January 28, 2003 suppression hearing is as follows. In the early morning hours of June 30, 2002, in a high-crime area in the town of Arnold, Pennsylvania, Officer Michael A. Krahe ("Officer Krahe") initiated a traffic stop of a Ford Mustang driven by Curt Scallio ("Scallio"). (Notes of testimony, 1/28/03 at 4–5, 7, 14.) Scallio was accompanied by Justin Glenn ("Glenn"), who was seated in the passenger seat, and appellee, who was in the rear of the vehicle. Officer Krahe testified that he stopped the vehicle for failing to come to a complete stop at a stop sign.

¶ 3 Officer Krahe approached the vehicle on the driver's side and asked for Scallio's license and registration. Scallio could produce neither; the officer asked him for his name and date of birth for the purpose of running his information through PennDot. (*Id.* at 5–6.) Shortly thereafter, Sergeant Joseph Nixon arrived and approached the passenger side of the vehicle. (*Id.* at 5, 7–8, 14–15.) Officer Krahe informed the sergeant of the facts of the situation. Sergeant Nixon asked whether the passengers had been identified, and Officer Krahe responded in the negative. (*Id.* at 15–16.)

¶ 4 While Officer Krahe continued to obtain information from the driver, Sergeant Nixon asked both passengers to identify themselves by requesting their names and dates of birth. Sergeant Nixon testified that he never told anyone in the vehicle that he was under arrest or was not free to leave. (*Id.* at 18.) When asked whether he recognized appellee's name, Sergeant Nixon responded, "I thought there might be warrants for [appellee]. I checked both [appellee] and Mr. Glenn for warrants." (*Id.* at 17.) This statement by Sergeant Nixon was not challenged on cross-examination. (*Id.* at 17, 21.)

---

1. This appeal is permissible as the Commonwealth has certified in good faith that the suppression order submitted for our review substantially handicaps the prosecution and the appeal is not intended for delay purposes. Pa.R.App.P. 311(d); *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

¶ 5 Upon checking, no information was available concerning Glenn; however, the sergeant discovered that there was an outstanding warrant for appellee's arrest in Allegheny County. (*Id.* at 21–22.) Appellee was asked to exit the vehicle and was searched. Pursuant to this search, drugs were found on his person. Appellee was arrested and charged with possession with intent to deliver a controlled substance, possession of a controlled substance, possession of a small amount, and possession of drug paraphernalia.[2]

¶ 6 Appellee filed a motion to suppress. Following a hearing, the Honorable Richard E. McCormick, Jr. granted the motion. Judge McCormick found that while the initial detention of the vehicle was valid, Sergeant Nixon's investigative detention of appellee was not supported by reasonable suspicion. The Commonwealth filed a timely appeal on February 5, 2003. Judge McCormick ordered the Commonwealth to file a concise statement of matters complained of on appeal; the Commonwealth complied and, herein, raises two issues for our consideration:

I. WHETHER THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS WHERE THE COURT FOUND THAT POLICE LACKED ANY LEGAL BASIS TO INQUIRE INTO THE IDENTITY OF PASSENGERS OF A VEHICLE?

II. WHETHER THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS WHERE THE COURT FOUND THAT THE APPELLEE WAS SEIZED?

Commonwealth's brief at 4.

¶ 7 "The applicable standard of review in a Commonwealth appeal from an order of suppression is well-settled. We 'must first determine whether the factual findings are supported by the record, and then determine whether the inferences and legal conclusions drawn from those findings are reasonable.'" *Commonwealth v. Mulholland,* 794 A.2d 398, 400 (Pa.Super.2002), quoting *Commonwealth v. Luv,* 557 Pa. 570, 575, 735 A.2d 87, 90 (1999) (other citations omitted). "We may 'consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted.'" *Id.,* quoting *Commonwealth v. Carter,* 779 A.2d 591, 592–593 (Pa.Super.2001) (other citations omitted). "When 'the evidence supports the suppression court's findings of fact . . ., this Court may reverse only when the legal conclusions drawn from those facts are erroneous.'" *Id.,* quoting *Carter,* 779 A.2d at 593 (other citations omitted).

¶ 8 The Commonwealth asks this court to decide whether the suppression court erred in finding that the officer's inquiry as to appellee's identity, a passenger in a vehicle lawfully stopped, was an unconstitutional intrusion of appellee's privacy rights. (Commonwealth's brief at 10; trial court opinion, 3/17/03 at 4.) There is no question that the initial stop of the vehicle in which appellee was a passenger was based on probable cause, satisfying the Fourth Amendment requirements. The trial court, however, held that as to appellee, "the record is devoid of any articulation of reasonable suspicion, which is required in an investigative detention." (Trial court opinion, 3/17/03 at 4.) The Commonwealth argues that Sergeant Nix-

---

2. Scallio was not issued a citation, but issued a verbal warning. (Notes of testimony, 1/28/03 at 6.)

on's request for appellee's name and date of birth was a minimal intrusion on appellee's privacy rights and not unreasonable, as the information requested was not incriminating in and of itself. (Commonwealth's brief at 10–11.) We agree.

¶ 9 The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protects individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." *Commonwealth v. Blair*, 394 Pa.Super. 207, 575 A.2d 593, 596 (1990), quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 236, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Evidence obtained from an unreasonable search or seizure is inadmissible at trial. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. *Commonwealth v. Key*, 789 A.2d 282, 288 (Pa.Super.2001).

> The first of these [interactions] is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigative detention' must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause. *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super.2000), *appeal denied*, 567 Pa. 712, 785 A.2d 89 (2001) (*quoting Commonwealth v. Ellis*, 541 Pa. 285, 293–294, 662 A.2d 1043, 1047–1048 (1995)).

*Id.*

¶ 10 A forcible stop of a motor vehicle by a police officer constitutes a seizure of a driver and the occupants; this seizure triggers the protections of the Fourth Amendment. *Commonwealth v. Knotts*, 444 Pa.Super. 60, 663 A.2d 216, 218 (1995); *Commonwealth v. DeWitt*, 530 Pa. 299, 302, 608 A.2d 1030, 1032 (1992). An officer is permitted to stop a motor vehicle to investigate a vehicle code violation which he or she observed. *Commonwealth v. Steinmetz*, 440 Pa.Super. 591, 656 A.2d 527, 528 (1995).[3]

¶ 11 In addition to the documentation that the police are permitted to obtain from the driver, during a routine traffic stop, a police officer may request a driver to step out of the vehicle as a matter of course. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Commonwealth v. Lopez*, 415 Pa.Super. 252, 609 A.2d 177 (1992). In *Maryland v. Wilson*, 519 U.S. 408, 414, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997),[4] the Court extended this rule to passengers in a stopped vehicle. The Supreme Court found that the interest in officer safety outweighs the minor intrusion on passengers who are "already stopped by virtue of

---

**3.** During the stop, an officer may check the "vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe necessary to enforce the provisions of [the Code]." 75 Pa.C.S.A. § 6308(b).

**4.** The Supreme Court has previously held that individuals have a lessened expectation of privacy while in an automobile. *New York v. Class*, 475 U.S. 106, 112–113, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986).

the stop of the vehicle." *Id.; see also Commonwealth v. Brown,* 439 Pa.Super. 516, 654 A.2d 1096, 1102 (1995), *appeal denied,* 544 Pa. 642, 664 A.2d 972 (1995) (police officer may request both drivers and their passengers to alight from lawfully stopped vehicles regardless of whether the police officer has a reasonable suspicion that criminal activity is afoot).

¶ 12 Instantly, the Commonwealth asks us to extend the same logic and find the police can require both the driver *and* the passengers in the vehicle to identify themselves during a routine traffic stop regardless of whether there is reasonable suspicion that the passengers are engaged in criminal activity. The Commonwealth posits that one's identity is not incriminating in and of itself and the mere asking of a passenger's name is not unreasonable. (*See* Commonwealth's brief at 11.) We agree and find that an officer's request for this information is not a violation of the passenger's Constitutional rights.

¶ 13 "[T]oday the constitutional prohibition against unreasonable searches and seizures extends beyond the home to protect the individual against unwarranted government intrusions into any area where the individual may harbor a reasonable expectation of privacy." *Commonwealth v. Beauford,* 327 Pa.Super. 253, 475 A.2d 783, 787 (1984), citing *Katz, supra.* Thus, we must determine whether appellee enjoyed an expectation of privacy in his identification information as a passenger in the vehicle and whether this is an expectation that society is willing to recognize as reasonable. "We consider the totality of the circumstances and carefully weigh the societal interests involved when determining the legitimacy of such an expectation." *Commonwealth v. Johnson,* 556 Pa. 216, 235, 727 A.2d 1089, 1098 (1999).

¶ 14 In *Commonwealth v. Duncan,* 572 Pa. 438, 817 A.2d 455 (2003), the Pennsylvania Supreme Court affirmed a panel decision of this court which held that one does not have an expectation of privacy in his or her identification information. "[A] person's name and address, by themselves, do not constitute information about which a person can have a reasonable expectation of privacy that society is willing to recognize." *Id.* at 444, 817 A.2d at 458–459, quoting *Commonwealth v. Duncan,* 752 A.2d 404, 412 (Pa.Super.2000), in turn quoting *State v. Chryst,* 793 P.2d 538, 542 (Alaska Ct.App.1990). One's name is subject to repeated disclosure every day, and we find identifying oneself to be a minimal intrusion. Additionally, the Supreme Court has previously held that the Fourth Amendment affords no basis for declining to provide a voice or handwriting sample, as a person has no legitimate expectation of privacy in his or her voice or handwriting. *See United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (compelled display of identifiable physical characteristics, such as voice exemplar, infringes no interest protected by the privilege against compulsory self-incrimination); *United States v. Mara,* 410 U.S. 19, 21, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) ("Handwriting, like speech, is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice.").

¶ 15 Recently, the United States Supreme Court addressed a similar issue in *Hiibel v. Sixth Judicial Dist. Court of Nev.,* —— U.S. ——, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). The Court upheld a Nevada state law requiring a citizen to disclose his name notwithstanding that the police lacked probable cause to believe that the citizen had committed a crime.

¶ 16 In *Hiibel*, the police received a report that a man standing outside a pick-up truck had struck a young female passenger in the truck. A deputy arrived at the site and noticed skid marks where the truck had stopped. Hiibel was standing outside the truck, and his 17–year–old daughter was seated inside. The officer asked Hiibel to identify himself and Hiibel refused. Subsequently, Hiibel was arrested for violating the Nevada "stop and identify" law.[5] *Id.* at ——, 124 S.Ct. at 2454. One of the arguments advanced by Hiibel was that compelling him to disclose his name in this circumstance violated his Fourth Amendment right to be free from unreasonable searches and seizures.

¶ 17 While *Hiibel* concerns not whether an officer can ask a person his or her name, but rather whether a person must disclose his or her name, we find the *Hiibel* analysis to be instructive. The Court recognized that:

> [a]sking questions is an essential part of police investigations. In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment. '[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.'

*Id.* at ——, 124 S.Ct. at 2458, quoting *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). Perhaps the more difficult and troubling question involves Fifth Amendment concerns. While Fourth Amendment rights may not be implicated in asking a passenger's identity, the disclosure of one's identity may present self-incrimination issues. As set forth by Justice Stevens' dissent in *Hiibel*:

> A person's identity obviously bears informational and incriminating worth,

'even if the [name] itself is not inculpatory.' [*U.S. v. Hubbell*, 530 U.S. 27, 38, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000).] A name can provide the key to a broad array of information about the person, particularly in the hands of a police officer with access to a range of law enforcement databases. And that information, in turn, can be tremendously useful in a criminal prosecution.

*Id.* at ——, 124 S.Ct. at 2464. However, the issue of . a passenger's right to not respond and the implication of Fifth Amendment claims in such circumstances are not before this court for review and must await another day.

¶ 18 We determine that asking a passenger for identification is reasonable; a person's name, like his voice or handwriting, is revealed in a variety of daily interactions and there is no legitimate expectation of privacy associated with one's identity. The principle that a person cannot claim the protections of the Fourth Amendment for what he "knowingly exposes to the public" is applicable in this matter. *See Dionisio*, 410 U.S. at 14, 93 S.Ct. 764.

¶ 19 We conclude that the officer did not unreasonably intrude on a protected privacy right of a passenger in a vehicle lawfully stopped when he asked appellee to identify himself. In light of our analysis of the Commonwealth's first issue, we have no need to examine the second issue presented.

¶ 20 Order reversed. Case remanded for trial. Jurisdiction relinquished.

---

5. While Pennsylvania does not have a "stop and identify" statute, 20 states have such enactments. *See Hiibel, supra* at ——, 124 S.Ct. at 2456.