COMMONWEALTH of Pennsylvania,
Appellee

v.

Detrick Nelson REED, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 25, 2011.
Filed May 5, 2011.

Emily Smarto, Greensburg, for appellant.

Michael A. Pacek, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

BEFORE: ALLEN, OLSON and COLVILLE *, JJ.

OPINION BY OLSON, J.:

Appellant, Detrick Nelson Reed, appeals from the judgment of sentence entered on March 9, 2010 following his bench trial convictions for one count each of persons not to possess a firearm, firearms not to be carried without a license, false identification to law enforcement authorities, possession of a small amount of marijuana, and possession of drug paraphernalia.[1] We affirm.

The facts of this case may be summarized as follows. On June 22, 2009, while on-duty in a marked police vehicle, Officer Steve Sandor of the Delmont Police Department observed an automobile run a red light at the corner of State Route 66 and West Pittsburgh Street. Officer Sandor pulled the vehicle over. A female was driving and Appellant was a passenger. The driver could not produce identification, but provided Officer Sandor her name and birth date. Officer Sandor determined there was an outstanding warrant for her arrest. Subsequently, Officer Sandor arrested the driver, conducted a search of her person, and uncovered narcotics and paraphernalia in her jacket. Further, the police dispatcher told Officer Sandor that the vehicle belonged to a man in Fayette County. Office Sandor returned to the vehicle to ascertain whether Appellant was the owner of the vehicle. Appellant told Officer Sandor that his name was Brandon Thomas and gave a fictitious date of birth. There was no police record found regarding that information. When confronted, Appellant provided his real name and birth date. Officer Sandor determined that there were no outstanding warrants for Appellant. However, Officer Sandor asked Appellant to exit the vehicle and then conducted a protective frisk. Officer Sandor recovered a loaded 9 mm pistol from Appellant's right rear pocket. Appellant was arrested and an additional search conducted at the police station uncovered three straws with narcotics residue on them. Pursuant to a warrant, a search of the vehicle in question revealed a bag of a small amount of marijuana on the passenger side of the automobile.

The Commonwealth filed the aforementioned charges against Appellant. Appellant filed an omnibus pre-trial motion seeking suppression of the evidence ob-

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. § 6105(a)(1), 18 Pa.C.S.A. § 6106(a)(1), 18 Pa.C.S.A. § 4914(a), 35 P.S. § 780–113(a)(31), and 35 P.S. § 780–113(a)(32), respectively.

tained, as well as his subsequent statements to police. Following a hearing on February 24, 2010, the Honorable Alfred B. Bell of the Westmoreland County Court of Common Pleas denied relief. Judge Bell filed an opinion in support of his denial on March 15, 2010. Prior to trial, the Commonwealth filed a motion *in limine* to preclude defense counsel from arguing that Appellant's constitutional rights had been violated because Judge Bell had already determined that there were no violations when he denied suppression. The trial court granted the Commonwealth's motion *in limine*. On March 9, 2010, the case proceeded to a bench trial before President Judge John E. Blahovec wherein Appellant was convicted of all charges. The trial court sentenced Appellant to an aggregate sentence of 5½ to 11 years of incarceration, with credit for time served. This timely appeal followed.[2]

On appeal, Appellant presents the following issues for our review:

I. Whether the lower court erred in denying [Appellant's] motion to suppress?

    A. Whether a passenger in a lawfully stopped vehicle has a Fifth Amendment right to allow him to refuse to respond to an officer's request for identification?

    B. Whether [Appellant] was subjected to an investigatory detention when Officer Sandor did not have, and could not articulate, specific facts that would give rise to a reasonable suspicion that criminal activity was afoot in violation of both the Fourth Amendment and Article

I, Section 8 of the Pennsylvania Constitution?

    C. Whether the Terry pat-down search of [Appellant] violates both the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution, when the unlawful search was conducted without the presence of [a] reasonable articulable belief that [Appellant] was involved in criminal activity or that he was armed or dangerous?

II. Whether the trial court erred in granting the Commonwealth's motion in limine which disallowed defense counsel from arguing constitutional violation to the jury (4th and 5th Amendment issues); essentially a from [sic] of jury nullification?

Appellant's Brief at 4–5 (complete capitalization omitted).

Appellant has presented his first issue with three sub-parts, each challenging different aspects of the order denying his motion to suppress. First, Appellant claims that his Fifth Amendment right to remain silent was violated because he was asked for identification at a time when police lacked reasonable suspicion that Appellant, as a passenger in a vehicle, was presently engaged in criminal activity. *Id.* at 17. In support of this claim Appellant cites *Commonwealth v. Au,* 986 A.2d 864 (Pa.Super.2009), which he claims effectively overruled our prior decision in *Commonwealth v. Campbell,* 862 A.2d 659 (Pa.Super.2004), for the contention that an illegal seizure occurred when Appellant was asked for identification. Appellant's Brief at 18–20. Next, Appellant claims that he was improperly subjected to an investigatory detention in the absence of

---

**2.** Appellant filed a notice of appeal on March 26, 2010. On March 29, 2010, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely and the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 3, 2010.

reasonable suspicion that criminal activity was afoot. Lastly, Appellant asserts that Officer Sandor unlawfully conducted a protective frisk because he did not articulate a reasonable ground to believe Appellant was armed and dangerous. Specifically, Appellant argues "there was no contraband in plain view, no weapons in plain view, no furtive movements by [Appellant], and no odors emanating from the vehicle." *Id.* at 21. We address each aspect of Appellant's claim in turn.

In reviewing these arguments, our standard is as follows:

> [An appellate court's] standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Stevenson,* 894 A.2d 759, 769 (Pa.Super.2006) (citation omitted).

We first address Appellant's contention that his Fifth Amendment constitutional right to remain silent was infringed upon when he was asked for identification. We begin by examining our decision in *Campbell.* Similar to the case at hand, Campbell was a passenger in a vehicle that was detained by police for failing to come to a stop at a stop sign. When the driver could not produce identification, police asked Campbell to identify himself and subsequently discovered an outstanding warrant

for his arrest. During the search incident to arrest, police found narcotics on Campbell's person.

In *Campbell,* a panel of this Court first examined the three levels of police interaction between citizens:

> The first of these [interactions] is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an 'investigative detention' must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause.

*Campbell,* 862 A.2d at 663 (internal citations omitted).

The *Campbell* panel then determined that police are permitted to stop an automobile after witnessing a motor vehicle violation and thereafter may request both the driver and the passengers to exit the vehicle. *Id.* Extending that logic, the *Campbell* Court determined that police may constitutionally request identification from a passenger during a routine traffic stop. *Id.* The *Campbell* panel concluded that, under the Fourth Amendment, there is no expectation of privacy regarding identification information. *Id., quoting Commonwealth v. Duncan,* 572 Pa. 438, 817 A.2d 455 (2003). Ultimately, our Court concluded:

> We determine that asking a passenger for identification is reasonable; a person's name, like his voice or handwriting, is revealed in a variety of daily interactions and there is no legitimate expectation of privacy associated with one's identity. The principle that a person cannot claim the protections of the Fourth Amendment for what he "know-

ingly exposes to the public" is applicable in this matter.

*Campbell,* 862 A.2d at 665.

Additionally, we note that in *Campbell,* this Court also relied upon the United States Supreme Court decision *Hiibel v. Sixth Judicial District Court of Nevada,* 542 U.S. 177, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). In *Hiibel,* police responded to a reported assault and asked Hiibel to identify himself when they approached him at the scene. Hiibel refused and was arrested pursuant to Nevada's stop and identify law.[3] The *Hiibel* Court ultimately concluded that a police request for identification is essential to police investigation and does not implicate the Fourth Amendment. *Id.* at 185, 124 S.Ct. 2451.

Instantly, Appellant relies upon a portion of the *Campbell* decision wherein the panel stated that "the more difficult and troubling question involves Fifth Amendment concerns[ ]" because "the disclosure of one's identity may present self-incrimination issues." *Campbell,* 862 A.2d at 665. In *Campbell,* this Court noted "the issue of a passenger's right to not respond and the implication of Fifth Amendment claims in such circumstances are not before this court for review and must await another day." *Id.* Appellant asserts that the day has come.

Interestingly, and important to the case at hand, the United States Supreme Court also analyzed a constitutional challenge under the Fifth Amendment in *Hiibel.* Therein, the Court opined:

> [Hiibel] further contends that his conviction violates the Fifth Amendment's prohibition on compelled self-incrimination. The Fifth Amendment states that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." To qualify for the Fifth

Amendment privilege, a communication must be testimonial, incriminating and compelled.

   \*     \*     \*

"[T]o be testimonial, an accused's communication must itself, explicitly or implicitly, relate to a factual assertion or disclose information." Stating one's name may qualify as an assertion of fact relating to identity. Production of identity documents may qualify as an assertion of fact relating to identity. As we noted ..., acts of production may yield testimony establishing "the existence, authenticity, and custody of items [the police seek]." Even if these required actions are testimonial, however, petitioner's challenge must fail because in this case disclosure of his name presented no reasonable danger of incrimination.

   \*     \*     \*

One's identity is, by definition, unique; yet it is, in another sense, a universal characteristic. Answering a request to disclose a name is likely to be so insignificant in the scheme of things as to be incriminating only in unusual circumstances. In every criminal case, it is known and must be known who has been arrested and who is being tried. Even witnesses who plan to invoke the Fifth Amendment privilege answer when their names are called to take the stand. Still, a case may arise where there is a substantial allegation that furnishing identity at the time of a stop would have given the police a link in the chain of evidence needed to convict the individual of a separate offense. In that case, the court can then consider whether the privilege applies, and, if the Fifth

---

**3.** Pennsylvania has no such law.

Amendment has been violated, what remedy must follow.

*Hiibel,* 542 U.S. at 190–191, 124 S.Ct. 2451 (citations omitted).

Here, Appellant's Fifth Amendment rights were not infringed upon. The record reveals that Officer Sandor's request for Appellant's identity did not compel him to be a witness against himself. Officer Sandor did not threaten to arrest Appellant when he failed to provide his name, or even when Appellant initially provided a false name. Furnishing his identity to police did not provide a link in the chain of evidence to subject Appellant to a separate offense. Moreover, Appellant's response to the request for identification was not testimonial in nature. It was not until police searched Appellant that a weapon was uncovered and they further determined that Appellant was not permitted to carry a firearm. As we conclude that Appellant's Fifth Amendment rights were not violated, this aspect of Appellant's argument fails.

█ Moreover, we reject Appellant's reliance on *Au* for the proposition that he was improperly subjected to an investigative detention based upon a lack of reasonable suspicion. In *Au,* police observed a parked vehicle with six occupants. The officer approached one of the passengers and asked what they were doing. The passenger told the officer that they were "hanging out." *Au,* 986 A.2d at 865. The police officer then demanded identification from all of the passengers. We determined that what initially began as a mere encounter ripened into an investigatory detention. This was so because "the subsequent request for identification of all the vehicle's occupants would have signaled to any reasonable person that the officer was

unsatisfied with the response that the occupants were just hanging out, and that the officer wanted to investigate further." *Id.* at 867. In addition, the officer in *Au* had not observed any evidence of criminal activity. Accordingly, we held that "[s]ince there was no reasonable suspicion to suspect [ ] any criminal activity, the investigative detention was constitutionally infirm." *Id.* at 868.[4]

The facts of the current case are readily distinguishable from *Au.* Here, police were investigating an underlying motor vehicle code violation. Thus, the *Campbell* decision is apropos, because police may constitutionally request identification from a passenger during a routine traffic stop. As such, Appellant's reliance on *Au* is misplaced. Accordingly, Appellant's claim that he was subjected to an unlawful investigatory detention fails.

█ In his third and final challenge to the order denying his motion to suppress, Appellant contends that the subsequent frisk was in violation of the Fourth Amendment because police lacked a reasonable, articulable belief that Appellant was armed and dangerous. He contends that "Officer Sandor's testimony clearly indicated there was no contraband in plain view, no weapons in plain view, no furtive movements by [Appellant] and no odors emanating from the vehicle." Appellant's Brief at 21. Upon review of the entire record, including the notes of testimony from the preliminary hearing which were admitted during Appellant's suppression hearing, we disagree.

Preliminarily, we examine the Commonwealth's assertion that *Commonwealth v. Jackson,* 907 A.2d 540 (Pa.Super.2006) con-

---

**4.** The Pennsylvania Supreme Court has granted a petition for allowance of appeal to examine our decision in *Au. See Commonwealth v.*

*Au,* 606 Pa. 113, 995 A.2d 349 (2010). However, review is still pending.

trols. In that case, we discussed a legal concept termed "the automatic companion rule":

The "automatic companion" rule provides that "all companions of [an] arrestee within the immediate vicinity, capable of accomplishing a harmful assault on the officer, are constitutionally subjected to the cursory 'pat-down' reasonably necessary to give assurance that they are unarmed." *United States v. Berryhill,* 445 F.2d 1189, 1193 (9th Cir. 1971). The Supreme Court of Pennsylvania has not yet addressed the constitutionality of this rule, although it has noted the existence of the rule in several decisions. *See, e.g., Commonwealth v. Kue,* 547 Pa. 668, 671 n. 1, 692 A.2d 1076, 1077 n. 1 (1997); *Commonwealth v. Shiflet,* 543 Pa. 164, 172 n. 4, 670 A.2d 128, 131 n. 4 (1995).

This Court has ruled that a *Terry* [5] frisk of an arrestee's companion is permissible and, recently, addressed the constitutionality of the automatic companion rule. Cases finding the *Terry* frisk of an arrestee's companion permissible include: *Commonwealth v. Kearney,* 411 Pa.Super. 274, 601 A.2d 346, 348 (Pa.Super.1992); *Commonwealth v. Chamberlain,* 332 Pa.Super. 108, 480 A.2d 1209, 1212 (Pa.Super.1984); and *Commonwealth v. Hook,* 313 Pa.Super. 1, 459 A.2d 379, 382 (Pa.Super.1983).

The constitutionality of the "automatic companion" rule was addressed in *Commonwealth v. Graham,* 454 Pa.Super. 169, 685 A.2d 132 (Pa.Super.1996), *rev'd on other grounds,* 554 Pa. 472, 721 A.2d 1075 (1998). The *Graham* court rejected a *per se* rule that a companion of an arrestee is subject to a "pat-down" regardless of the justification for such search as contrary to the Fourth Amendment of the United States Consti-

tution and Article I, Section 8 of the Pennsylvania Constitution. 685 A.2d at 136. In *Graham,* we reiterated the two separate standards that generally must be met for a proper stop and frisk, *i.e.,* the officer must have reasonable suspicion, based on articulable facts, that criminal activity may be afoot and that the suspect may be armed and dangerous. *Id.*

The *Graham* court held that the first prong of the "stop and frisk" test is a nullity in cases involving companions of arrestees. In light of the extreme risks facing lawmen in performing arrests, it will always be reasonable for officers to take some actions to insure their safety concerning companions of arrestees. To find otherwise, would be equivalent to turning a blind eye to reality and declaring open season on our protectors of the peace. Consequently, it is inherently reasonable for a law enforcement officer to briefly detain and direct the movement of an arrestee's companion, regardless of whether reasonable suspicion exists that the companion is involved in criminal activity. Such minimal intrusion upon the companion's federal and state constitutional rights are clearly outweighed by the need to extinguish the risks otherwise posed to the lawman's well-being. Accordingly, the first prong of the "stop and frisk" test is a nullity in cases involving an arrestee's companion. 685 A.2d at 136–37. Thus, in cases involving the frisk of an arrestee's companion, the sole question becomes whether the police officer had a reasonable belief that the companion was armed and dangerous. 685 A.2d at 137.

*Jackson,* 907 A.2d at 543–545 (original emphasis omitted). We agree that the auto-

---

**5.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).

matic companion rule is implicated herein. We now examine whether, in this case, Officer Sandor had a reasonable belief that Appellant was armed and dangerous.

Our Supreme Court has stated:

The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger. The existence of reasonable suspicion to frisk an individual must be judged in light of the totality of the circumstances confronting the officer.

*Commonwealth v. Taylor*, 565 Pa. 140, 771 A.2d 1261, 1268–1269 (2001).

■■■■■ Here, the trial court provided a lengthy analysis regarding the various levels of interaction with police. It opined that reasonable suspicion supported Officer Sandor's investigatory detention. The trial court stated that it was "not unreasonable" to detain Appellant because he initially refused to identify himself, then offered an unverifiable alias, and finally gave his real name.[6] Trial Court Opinion,

3/15/2010, at 13. The trial court continued that once Appellant gave Officer Sandor his correct name, "Officer Sandor was able to determine that [Appellant] had a criminal record (i.e. two Felony convictions for Armed Robbery)." *Id.* at 13. The trial court then concluded that "[i]t would have been jeopardizing the officer's safety had Officer Sandor given [Appellant] the opportunity to depart the scene (after exiting the vehicle) without first insuring that, in so doing, he would not be permitting a 'dangerous person' to get behind him." *Id.* Based on the totality of circumstances and independent review of additional evidence of record,[7] we agree that there were sufficient grounds for Officer Sandor to conclude that Appellant was armed and dangerous.

The evidence of record established the following. Officer Sandor observed a car "run through [a] red light without stopping[ ]" and the driver was "wanted on a warrant out of Allegheny County." N.T., 2/24/2010, at 8–9. Officer Sandor asked her to step out of the vehicle; he handcuffed her and during a search incident to

6. As previously stated, police may frisk an arrestee's companion if believed to be armed and dangerous and need not articulate a basis of reasonable suspicion that criminal activity is afoot to do so. However, we note that another panel of this Court recently examined the issue of whether a passenger in a vehicle stopped for a motor vehicle violation who gave false identification to law enforcement authorities could support an investigatory detention. *See Commonwealth v. Barnes*, 2011 PA Super 24, 14 A.3d 128. This Court concluded that "if [the defendant] was not yet under official investigation for a violation of law when asked for his name and DOB, the provision of false information was not a violation of law. Thus, that failure to provide true information cannot constitute the basis for the official investigation of a violation of law." *Id.* at 132. On this basis, the *Barnes* Court vacated the judgment of sentence for falsification of identity to authorities. In contrast, *sub judice*, Appellant does not challenge his

conviction for falsification of identity to authorities on appeal. An appellate court does not sit to review questions that were neither raised, tried, nor considered in the trial court. *Commonwealth v. Boros*, 533 Pa. 214, 620 A.2d 1139, 1143 (1993). Moreover, an appellate court can only pass upon the legal question involved in any case which comes before it. *Id.*

7. We note that the Rule 1925 opinion cites only to the notes of testimony from the suppression hearing. However, at the suppression hearing, the parties stipulated to allowing the trial court to make findings of fact and conclusions of law based upon the testimony from the preliminary hearing, with additional, supplemental testimony. *See* N.T., 2/24/2010, at 5–6. Thus, this Court may properly rely upon the preliminary hearing transcript upon review.

her arrest uncovered narcotics and paraphernalia from her jacket pocket. *Id.* at 10. Officer Sandor determined that the vehicle in question did not belong to the driver or Appellant, but rather to a man from "Acme in Fayette County." *Id.* at 11. Officer Sandor testified that "[b]ecause of the totality of the circumstances, the car not belonging to anybody in the vehicle, drugs on the [driver] and just— you know, everything, I asked him to step out and—for officer safety and be patted down." N.T., 7/28/2009, at 10–11. He stated that he was concerned for his safety and the safety of three back-up officers who arrived shortly thereafter on the scene. *Id.* at 35–36. Officer Sandor also noted that Appellant's hands "weren't readily visible" and "kind of hidden by his shirt a little bit." *Id.* at 36; N.T., 2/24/2010, at 13.

Based on the foregoing, we find no error in determining that the officer reasonably believed Appellant was armed and dangerous. The facts demonstrate clearly that police witnessed a traffic violation. Police arrested the driver and she had drugs on her. The car did not belong to either the driver or Appellant. Appellant's hands were not visible. It was not unreasonable for police to fear their safety and the protective frisk was proper. As a result, each of the three sub-issues related to Appellant's challenge to the trial court's denial of suppression lack merit and Appellant's first issue fails.

In his second issue, Appellant contends that the trial court erred by granting the Commonwealth's motion *in limine* which precluded Appellant's counsel from arguing constitutional violations to the jury.

Because we have already determined Appellant's constitutional rights were not violated, this issue must likewise fail.[8]

Judgment of sentence affirmed.

---

**8.** Furthermore, upon review of the trial transcript, Appellant waived his right to a jury trial after a thorough and proper colloquy. Appellant cannot now complain that the Commonwealth's motion *in limine* to preclude Appellant from arguing constitutional violations before a jury was improperly granted when he was never before a jury. Moreover, Appellant does not argue that the trial court's ruling left him with no other recourse but to proceed to a bench trial.