**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Louis T. DURR, Jr., Appellee.**

Superior Court of Pennsylvania.

Submitted June 22, 2011.

Filed Oct. 12, 2011.

Reargument Denied Dec. 16, 2011.

Robert A. Sambroak, Jr., Assistant District Attorney, Erie, for Commonwealth, appellant.

Nicole D. Sloane, Public Defender, Erie, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., BENDER and STRASSBURGER *, JJ.

OPINION BY BENDER, J.:

This is a Commonwealth appeal from the trial court's order granting Louis T. Durr Jr.'s (Defendant) motion to suppress. The Commonwealth claims that the trial court erred in determining that the police officer's questioning of Defendant regarding his identity was unconstitutional. For the reasons that follow, we reverse.

The facts of this case are straightforward and undisputed. Officer Daniel Shields of the Erie Police Department was assisting another officer in a traffic stop. Defendant was a passenger in the stopped vehicle. Officer Shields "went to the passenger's side to identify the passengers in the vehicle." N.T., 12/6/10, at 3. Officer Shields testified that it was his department's policy to attempt to identify everyone that is in a vehicle during a traffic stop.

Defendant gave Officer Shields the name of "James Durr," which was a known alias for Defendant. *Id.* at 3–4. Officer Shields received further information regarding a description of Defendant's tattoos, which matched Defendant's appearance. There was an outstanding warrant for Defendant. Accordingly, Officer Shields arrested Defendant. During transport to the station, Defendant admitted his true identity.

Based on the foregoing, the Commonwealth charged Defendant with false identification to law enforcement authorities.

*See* 18 Pa.C.S. § 4914(a). Defendant filed a motion to suppress his statement to Officer Shields. In his motion to suppress, Defendant did not challenge the legality of the stop. Rather, he claimed that the inquiry into his identity constituted an investigative detention that was not supported by reasonable suspicion. The trial court granted the motion to suppress, but the court did not issue an opinion explaining its reasoning. However, in its order granting the motion, the court stated that Defendant was subjected "to at least an investigative detention without a reasonable basis in fact." Order, 12/7/10, at 2 (footnote omitted). This appeal followed in which the Commonwealth presents the following question for our review:

Whether the lower court erred as a matter of law in concluding that the interaction between a police officer and a passenger in a car legally stopped for a Motor Vehicle Code violation was entirely an investigative detention rather than an initial mere encounter which then turned into an investigative detention based on reasonable suspicion.

Commonwealth's Brief at 2.

We begin with our standard of review.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding

* Retired Senior Judge Assigned to the Superior Court.

on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Byrd,* 987 A.2d 786, 790 (Pa.Super.2009).

We conclude that the outcome of this appeal is controlled by our holding in *Commonwealth v. Campbell,* 862 A.2d 659 (Pa.Super.2004). In *Campbell,* the defendant was a passenger in a vehicle that the police had stopped for failure to obey a stop sign. There was a warrant for the arrest of the defendant, and upon ascertaining his identity, the police arrested him. A subsequent search revealed drugs, which he moved to suppress prior to trial.

■■■■ The trial court granted the motion to suppress and on appeal to this Court, the Commonwealth claimed that the trial court had erred in finding that the officer's inquiry as to the defendant's identity, a passenger in a lawfully stopped vehicle, was an unconstitutional intrusion. We agreed and held that the police could inquire of a passenger's identity in a lawfully stopped vehicle without triggering any constitutional protections.[1]

We determine that asking a passenger for identification is reasonable; a person's name, like his voice or handwriting, is revealed in a variety of daily interactions and there is no legitimate expectation of privacy associated with one's identity. The principle that a person cannot claim the protections of the Fourth Amendment for what he knowingly exposes to the public is applicable in this matter.

We conclude that the officer did not unreasonably intrude on a protected privacy right of a passenger in a vehicle lawfully stopped when he asked appellee to identify himself.

*Id.* at 665 (citation omitted). Clearly, we are bound by the precedent set forth in *Campbell.* Therefore, we likewise conclude that Officer Shields did not violate Defendant's Fourth Amendment rights by requesting that he identify himself.[23]

While the Commonwealth argues that the trial court erred in granting Defendant's motion to suppress on Fourth Amendment grounds, the trial court stated

---

1. The issue there was the right to be free from unreasonable searches and seizures. This Court specifically deferred the issue of whether the right against self-incrimination was violated, as that issue was not before us. *Id.* at 665 (stating, "However, the issue of a passenger's right to not respond and the implication of Fifth Amendment claims in such circumstances are not before this court for review and must await another day.").

2. We note that our decision here does not implicate our recent holding in *Commonwealth v. Au,* 986 A.2d 864 (Pa.Super.2009), a case in which we concluded that a request for identification and additional circumstances constituted an investigative detention, as the defendant in that case was not a passenger in a vehicle that had been lawfully stopped for a motor vehicle code violation.

3. In support of affirmance, Defendant also argues a sufficiency issue and has attached to his brief the case of *Commonwealth v. Barnes,*

14 A.3d 128 (Pa.Super.2011), in which we interpreted the applicability of 18 Pa.C.S. § 4914. In *Barnes,* we stated:

Literally read, the statute in question does not make it illegal to provide to a law enforcement authority false information as to one's identity unless and until one is first apprised that he is the subject of an official investigation of a violation of law. If one provides false information as to his identity prior to that point, he has not violated the statute. Thus, any investigation centered solely upon the providing of false information as to one's identity would not be an investigation of a violation of law.

*Id.* at 131. While it seems that our holding in *Barnes* would control the outcome of this case, it is premature for this Court to address the sufficiency of the evidence against Defendant, and therefore, we must decline Defendant's invitation to do so.

that it was basing its decision on a Fifth Amendment violation. Order, 12/7/10, at 2 n. 1. As the trial court has indicated that this was the basis of its decision, we shall briefly address whether there was a Fifth Amendment violation in this case.

■■■ In relevant part, the Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.

> The Fifth Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. [T]he availability of the [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, **but upon the nature of the statement or admission and the exposure which it invites.** The Fifth Amendment privilege against self-incrimination can be asserted in any proceeding in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, **could be used in a subsequent state or federal criminal proceeding.**

*Commonwealth v. Brown*, 2011 PA Super 47, 26 A.3d 485, 493–94 (2011) (citations and quotation marks omitted) (emphasis added). Thus, the focus of any Fifth Amendment claim must be based on the nature of the compelled statement in relation to an existing or potential future criminal proceeding. In either case, a claim can only be sustained if the compelled statement is incriminating. "[T]he privilege extends not only to the disclosure of facts which would in themselves establish guilt, but also to any fact which might constitute an essential link in a chain of evidence **by which guilt can be established.**" *Commonwealth v. Saranchak*, 581 Pa. 490, 866 A.2d 292, 303 (2005) (emphasis added).

In this case, Officer Shields asked Defendant for his name. After ascertaining Defendant's identity, first by means of the description and information received over the radio and later by Defendant's own admission, Officer Shields arrested Defendant on an outstanding warrant and the Commonwealth charged Defendant with providing false information to law enforcement authorities. We shall address whether there was a Fifth Amendment violation under either circumstance.

In *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004), the U.S. Supreme Court discussed the Fifth Amendment implications of requesting that a person identify himself during an encounter with a law enforcement officer.

> Answering a request to disclose a name is likely to be so insignificant in the scheme of things as to be incriminating only in unusual circumstances. In every criminal case, it is known and must be known who has been arrested and who is being tried. Even witnesses who plan to invoke the Fifth Amendment privilege answer when their names are called to take the stand. Still, a case may arise where there is a substantial allegation that furnishing identity at the time of a stop would have given the police a link in the chain of evidence needed to convict the individual of a separate offense.

*Id.* at 191, 124 S.Ct. 2451 (quotation marks omitted). *See also Commonwealth v. Reed*, 19 A.3d 1163 (Pa.Super.2011).

■ Regarding Defendant's arrest on an outstanding warrant, the Fifth Amendment offers a person no protection where there is a warrant for the person's arrest. Rather, the purpose of the Fifth Amendment is to protect an individual from providing the police or the prosecution with evidence that can be *used to establish his or her guilt in a criminal proceeding.* Clearly, the Defendant's name could not be used *in establishing his guilt* of the charge relating to the outstanding warrant, assuming that is, that his guilt had not already been established on that charge.

■ In this case, the Commonwealth also charged Appellant with a new crime for providing false information. However, it was not Defendant's providing his name that gave rise to the new charge, but instead, Defendant's decision to lie to the police and give them a fake name that gave rise to the new charge. Officer Shields requested Defendant's name and at that moment, there was no threat of a future criminal proceeding. Thus, Defendant's providing his real name was not a link in the chain of evidence for the future charge of providing false information to a law enforcement authority. Furthermore, as stated in footnote three, *supra*, it is questionable whether even Defendant's giving of a false name, when he was not subject to an investigation, can provide a basis for a charge of violating 18 Pa.C.S. § 4914.

■ Finally, since the request for identification in this case transpired during a mere encounter, there was no compulsion to respond. Under Fourth Amendment law, unless an officer possesses reasonable suspicion that a passenger is in violation of a law or that criminal activity is afoot, the interaction between the officer and the passenger must be limited to a mere encounter, which imposes no duty on the passenger to respond or even interact with the officer. *See Barnes,* 14 A.3d at 132. *See also Reed,* 19 A.3d at 1168 (Pa.Super.2011) (finding that a passenger was not compelled to respond to a request for identification from a police officer). *Accord Commonwealth v. Beattie,* 411 Pa.Super. 177, 601 A.2d 297 (1991) (where the police lack the requisite cause to conduct an investigative detention, a person is free to disregard the police inquiries).

Simply because a request for identification is constitutionally permissible under the Fourth Amendment does not mean the person of whom the request is made must respond. Thus, in the course of a mere encounter, an officer may ask any number of relatively innocuous questions that do not elevate the interaction to an investigative detention. These inquiries are not constitutionally infirm precisely because they are made absent coercive circumstances that would compel a person to respond. In the instant case, there is no question that the interaction between Defendant and Officer Shields was a mere encounter. Officer Shields did not threaten Defendant or act in any manner that suggested that Defendant had been seized and was compelled to comply. Consequently, for Fifth Amendment purposes, Defendant was not compelled to reveal his identity.

Order reversed. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.