J-S71005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
        Appellee : 
: 
        v. : 
: 
MICHAEL SEAN KEYS, JR., : 
: 
        Appellant : No. 731 MDA 2014

Appeal from the Judgment of Sentence Entered April 24, 2014
In the Court of Common Pleas of York County
Criminal Division No(s).: CP-67-CR-0007095-2013

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, and FITZGERALD,[*] JJ.

DISSENTING MEMORANDUM BY FITZGERALD, J.: **FILED MARCH 27, 2015**

I respectfully dissent. I agree with the majority that the trial court properly found the officer had probable cause to initiate the vehicle stop. I respectfully disagree, however, that Appellant has waived a challenge to the officer's demand for his identification and inquiry for criminal information using his name.

Because counsel has filed an ***Anders*** petition to withdraw, this Court is tasked with conducting "our own review of the proceedings and mak[ing] an independent judgment to decide whether the appeal is, in fact, wholly frivolous." ***See Commonwealth v. Washington***, 63 A.3d 797, 800 (Pa. Super. 2013).

---

[*] Former Justice specially assigned to the Superior Court.

In ***Commonwealth v. Campbell***, 862 A.2d 659 (Pa. Super. 2004), this Court held "that the officer did not unreasonably intrude on a protected privacy right of a passenger in a vehicle lawfully stopped when he asked [the defendant/passenger] to identify himself." ***Id.*** at 665. However, I discern a further question that has arisen in this case—whether an officer must have reasonable suspicion or probable cause to then search a police or criminal database with the passenger's name.

In ***Campbell***, the officer asked the defendant/passenger for his name and date of birth. ***Id.*** at 661. "When asked whether he recognized" the defendant's name, the officer "responded, 'I thought there might be warrants for [him]. I checked [him] for warrants.'" ***Id.*** "This statement by [the officer] was not challenged on cross-examination." ***Id.*** "Upon checking, [the officer] discovered that there was an outstanding warrant for [the defendant's] arrest." ***Id.*** The demand for the defendant's identification was upheld by this Court. ***Id.*** at 665.

In ***Commonwealth v. Durr***, 32 A.3d 781 (Pa. Super. 2011), the officer attempted to identify the defendant/passenger, consistent with police department policy "to identify everyone that is in a vehicle during a traffic stop." ***Id.*** at 783. The defendant gave the name of 'James Durr,' which was a known alias for [him. The officer] received further information regarding a description of [the d]efendant's tattoos, which matched [the d]efendant's appearance." ***Id.*** The officer discovered an outstanding warrant for the

- 2 -

defendant and arrested him. **_Id._** On appeal, this Court relied on **_Campbell_** and concluded the officer "did not violate [the d]efendant's Fourth Amendment rights by requesting that he identify himself." **_Id._** at 784.

In **_Commonwealth v. Reed_**, 19 A.3d 1163 (Pa. Super. 2011), the officer found the driver of the vehicle had an outstanding arrest warrant and arrested her. **_Id._** at 1164. "[T]he police dispatcher told [the officer] that the vehicle belonged to a man in" another county, and the officer asked the defendant/passenger whether he was the owner of the vehicle. **_Id._** The defendant gave a fictitious name and date of birth. **_Id._** "There was no police record found regarding that information. When confronted, [the defendant] provided his real name and birth date" and the officer determined there were no outstanding warrants for him. **_Id._** However, the officer asked the defendant to exit the vehicle and conducted a protective frisk, in which he recovered a loaded gun. **_Id._** On appeal to this Court, the defendant claimed, _inter alia_, "that he was improperly subjected to an investigatory detention in the absence of reasonable suspicion that criminal activity was afoot." **_Id._** at 1165-66. Noting that **_Campbell_** held "police may constitutionally request identification from a passenger during a routine traffic stop," this Court denied relief. **_Id._** at 1168.

In the case _sub judice_, Officer Tiffany Vogel testified at the suppression hearing that she observed Appellant in the rear seat of the vehicle, and he did not have his seat belt on. N.T., 3/21/14, at 11. The

officer testified,

> I did recognize him as Michael Keys, [Appellant.[1]] I did ask him for his name because I didn't remember off the top of my head exactly what his name was. I just know I encountered him before. He did give me his name. upon running his name for warrants, it was found that he was wanted . . . and we had detained him at that time, arrested him.

*Id.*

On cross-examination, the following exchange occurred:

> [Appellant's counsel:] And the reason for you speaking to [Appellant] was that he was not wearing a seat belt?
>
> [Officer Vogel:] Yes, that's the violation. However, I always speak to all occupants.
>
> * * *
>
> Q. And in speaking to [Appellant], you recognized that passenger as Mr. Keys?
>
> A. Yes.
>
> Q. Even though you recognized him, you simply asked him for his ID?
>
> A. I didn't quite remember part of his name. I don't remember if it was . . . Michael, if I couldn't remember Keys, or vice versa. That's why I asked him for his name, which he gave me his correct name.
>
> Q. And that's how you determined he had outstanding warrants?
>
> A. That's correct.

---

[1] At this point, Officer Vogel identified Appellant in the courtroom. N.T., 3/21/14, at 11-12.

- 4 -

*Id.* at 20-21.

We note the following. In *Campbell* and *Durr*, the officer had some additional facts or information of wrongdoing before checking the defendant's name on police records—in *Campbell*, a belief that the defendant had an arrest warrant and in *Durr*, the officer's knowledge that the name given was an alias for the defendant as well as information regarding his tattoos.[2] *Durr*, 32 A.3d at 783; *Campbell*, 862 A.2d at 661. In *Reed*, the recitation of facts revealed no such additional facts before the officer checked the name first given by the defendant. *See Reed*, 19 A.3d at 1164. Nevertheless, none of these decisions addressed whether an officer must have reasonable suspicion or probable cause to check police databases with a name given.

I believe this issue is properly before us in this appeal. *See Washington*, 63 A.2d at 800. In the instant case, Officer Vogel observed Appellant did not have on a seatbelt and testified specifically that this was "the violation." N.T. at 20. The officer also recognized Appellant from a prior encounter. *Id.* at 11-20. Accordingly, I would remand for counsel to file either an amended *Anders* brief or advocate's brief addressing this issue—whether the officer could check Appellant's name in the police database. I would also allow the Commonwealth the opportunity to respond.

For these reasons, I dissent.

---

[2] There was no further explanation in *Durr* as to how the officer received the information about the defendant's tattoos. *See Durr*, 132 A.3d at 783.