J-A10001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:            PENNSYLVANIA
Appellant   :
:
:
:
v.             :
:
:
:
DAHKEEM MIKE   :   No. 765 EDA 2018

Appeal from the Order February 13, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006930-2017

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:         **FILED JULY 22, 2019**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Philadelphia County, suppressing firearm evidence seized from Defendant, Dahkeem Mike.  The Commonwealth argues the trial court improperly suppressed the evidence where Mike's arresting officer had reasonable suspicion to search Mike when he saw "something poking out" from his waistband.  After careful review, we affirm.

The suppression court stated the facts as follows:

On July 13, 2017, at approximately 10:30 PM, Officer [Aquil] Byrd and his partner were on routine patrol in an unmarked vehicle heading westbound on Ellsworth [Street], near its intersection with 58th Street, in the City of Philadelphia, Pennsylvania.  Officer Byrd, who was driving the patrol vehicle, observed [Mike] standing on the sidewalk in front of 5850 Ellsworth.  [Mike] was conversing with several individuals.  [Mike] was wearing a slim, dark colored T-shirt and sweatpants.  Officer Byrd observed "something poking out" from [Mike's] waistband causing an angular bulge under his T-shirt.  Officer Byrd admitted he did not

observe a firearm, but he believed, based on his experience and special training to identify persons armed with a weapon, [Mike] was carrying an unholstered firearm in his waistband. Officer Byrd opined that due to the location of the bulge, it was not a cell phone or keys in [Mike's] waistband.

Officer Byrd slowed the speed of his patrol vehicle. [Mike] looked in the direction of the officers and walked, but did not run, up the stairs of 5848 Ellsworth Street and subsequently sat down on the bannister separating the properties. Officer Byrd stopped his patrol vehicle and exited with [his] weapon drawn. At no point in time did Officer Byrd observe [Mike] reach for his waistband or make any other furtive movements. Without posing any questions to [Mike], Officer Byrd ordered [Mike] to raise his hands. [Mike] complied. Officer Byrd immediately reached for the bulge in [Mike's] waistband and retrieved the firearm, which was loaded. Officer Byrd admitted that he did not perform a pat-down of [Mike], but the officer immediately knew the bulge was a firearm when he felt a large object with a lot of weight. Officer Byrd described the subject area [as] having a history of shootings, including a homicide that occurred one (1) month earlier.

Trial Court Opinion, 5/14/18, at 2-3 (citations omitted).

On November 14, 2017, Mike filed an omnibus pretrial motion to suppress the evidence seized during the stop. The suppression court held a hearing on January 22, 2018, and, on February 13, 2018, granted the motion and suppressed the firearm evidence. On March 13, 2018, the Commonwealth filed a notice of appeal certifying that the suppression court's ruling substantially handicapped the prosecution. *See* Pa.R.A.P. 311(d). The Commonwealth filed a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal raising the single issue that the trial court erred in suppressing the firearm evidence.

- 2 -

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 874 A.2d 108, 115 (Pa. Super. 2005) (citation omitted). As Mike prevailed in the matter, we must review the record in the light most favorable to the defendant. *See Commonwealth v. Rickabaugh*, 706 A.2d 826, 832 (Pa. Super. 1997). If the evidence supports the trial court's findings, we may reverse only if the court erred in reaching its legal conclusions. *Commonwealth v. Coleman*, 19 A.3d 1111, 1115 (Pa. Super. 2011).

The trial court found there was no reasonable suspicion of criminal activity when Officer Byrd performed an investigative stop. There are three levels of police interaction with citizens. *Commonwealth v. Reed*, 19 A.3d 1163, 1166 (Pa. Super. 2011).

> The first of these [interactions] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention[,]" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Campbell*, 862 A.2d 659, 663 (Pa. Super. 2004).

Here, Officer Byrd discovered the gun after seeing Mike standing on the sidewalk with a bulge in his waistband, talking to three other men, in an area

with "a lot of shootings." N.T. Trial, 1/22/18, at 6. Therefore, we must determine if the record supports the suppression court's findings that the officer lacked reasonable suspicion to stop and detain Mike.[1] *See id.*; *Jones*, 874 A.2d at 115.

It is well-established that in order to perform an investigatory stop, a police officer must have reasonable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The totality of the circumstances must be considered when determining if there was reasonable suspicion. *United States v. Cortez*, 449 U.S. 411, 417 (1981). In determining whether this level of suspicion has been attained, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. It is an objective inquiry, and factors considered together can generate reasonable suspicion even though each factor individually may be consistent with innocent behavior. *See Commonwealth v. Zahir*, 751 A.2d 1153, 1156 (Pa. 2000); *see also Commonwealth v. Randolph*, 151 A.3d 170, 178 n.2 (Pa. Super. 2016). We do not view the situation as an ordinary citizen might; instead, we focus on the circumstances as seen through the eyes of the trained officer. *In the Interest of B.C.*, 683 A.2d 919, 924 (Pa. Super. 1996).

---

[1] The Commonwealth does not challenge the suppression court's finding that the interaction was an investigatory stop.

Our Court has long held that the mere presence of an uncertain bulge under clothing is not sufficient to raise a reasonable suspicion of criminal activity. *See Commonwealth v. Martinez*, 588 A.2d 513, 516 (Pa. Super. 1991) (finding no reasonable suspicion of crime when defendant walked quickly away from officers with bulge in pocket). Our Supreme Court recently expanded the protections against searches in *Commonwealth v. Hicks*, No. CP-39-CR-0005692-2014, 2019 Pa. Lexis 3064 (Pa. May 31, 2019). *Hicks* overturned *Commonwealth v. Robinson*, 600 A.2d 957 (Pa. Super. 1991), and its progeny which held "possession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer may briefly detain him in order to investigate whether the person is properly licensed." *Hicks*, 2019 Pa. Lexis at *2; *Robinson*, 600 A.2d at 959.

In *Hicks*, officers responded to a camera operator of a gas station reporting a man with a gun. The camera operator saw the defendant, via live surveillance, with a weapon, in a high-crime area, at 3:00 a.m. When the officers arrived, they saw the defendant driving his vehicle to exit the parking lot. After they saw Hicks move his hands in the vehicle, they ordered Hicks to keep his hands up. Then, they performed an investigative stop and took defendant's gun from the holster on his waistband. The officers restrained Hicks and removed him from the vehicle. The officers smelled alcohol on Hicks and discovered marijuana during a search of his pockets. Upon further

investigation, he officers discovered that Hicks had a license to carry a concealed weapon. Hicks was charged with driving under the influence and possession of marijuana.

Our Supreme Court found the investigative stop violated the fourth amendment because the mere possession of a firearm does not raise a reasonable suspicion that crime is afoot.[2] It noted that "an individual licensed to carry a firearm may do so in public, openly or concealed, within a vehicle or without, throughout every municipality in Pennsylvania." *Id.* at *13-14.[3] Thus, there "is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone suggestive of criminal activity." *Id.* at *14. In other words, because a firearm can be legally carried anywhere in the state, a firearm alone cannot give rise to a reasonable suspicion of criminal activity. Unless the officer is aware a person is not permitted to possess a firearm, mere possession of a firearm does not raise a reasonable suspicion of criminal activity. *See id.*

---

[2] The Supreme Court made special note that it did not consider defendant's hand movements when ruling on the suppression motion because it found "the [suppression] court clearly opined that the detention was justified prior to that observation." *Id.* at *7. Notably, as there were no furtive hand movements in the present case, we will not address this issue.

[3] The *Hicks* Court recognizes that Philadelphia County has stricter gun laws than the other counties in Pennsylvania. *Hicks*, 2019 Pa. Lexis at *13 (citing 18 Pa.C.S. § 6108). It appears that the holding in *Hicks* would still apply under the limited facts of the present case.

- 6 -

Here, the articulable facts are that Mike had a bulge in the front of his pants, he was in an area with a history of "a lot of shootings," and he walked away from the officers to sit on stair railings. Officer Byrd performed an investigatory detention because he suspected Mike was carrying a concealed weapon. Even if these facts are sufficient for Officer Byrd to determine that Mike had a firearm, *Hicks* holds that a concealed firearm cannot create a reasonable suspicion of criminal activity. Like *Hicks*, Officer Byrd's only reason to suspect criminal activity was the suspicion that Mike was carrying a firearm, in a high-crime area, at night. Therefore, Officer Byrd lacked reasonable suspicion to stop and frisk Mike and the trial court properly suppressed the firearm evidence. *Jones*, 874 A.2d.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/22/19